PER CURIAM.
 

 Fleet Mortgage Company appeals from an order of the district court
 
 [1]
 
 holding it in contempt of the bankruptcy court’s
 
 [2]
 
 order of April 4, 1984. The district court’s order required Fleet to pay a fine equal to the amount of its claim in bankruptcy against the debtor, Hubbard, plus attorney’s fees. The bankruptcy court had issued an order on September 26, 1985, in which it denied Fleet’s motion to dismiss Hubbard’s bankruptcy case and recommended that the district court find Fleet in contempt of its earlier order. The district court adopted the recommendation after reviewing the file. For reversal, Fleet argues that the contempt order was in error because Fleet did not knowingly and willfully violate the bankruptcy court’s earlier order. We affirm the order of the district court.
 

 On May 18, 1982, Frank J. Hubbard, Jr. filed a voluntary Chapter 7 bankruptcy petition. Fleet Mortgage, then known as Mortgage Associates, Inc., with knowledge of the bankruptcy filing and without making any motion for relief from the automatic stay, foreclosed on Hubbard’s house and bought it at the ensuing public sale. Fleet then had Hubbard (who is disabled), his wife, and their four children evicted. Later, Hubbard converted the Chapter 7 proceeding to one under Chapter 13. In April 1983, in response to a motion by Hubbard, the bankruptcy court found Fleet in contempt and ordered that the sale be set aside. On April 4, 1984, the bankruptcy court issued another order setting out the
 
 *780
 
 terms of a settlement between the parties. This order required Fleet to file an amended proof of claim, reducing the arrearages owed on its mortgage by the amount of the debtor’s expenses caused by his wrongful eviction. The house had been vacant since the eviction and was no longer habitable. Fleet was ordered to repair the damage to Hubbard’s house to his satisfaction or to pay him the amount (approximately $10,-000) of his contractor’s estimate for the job. The order specifically stated that the bankruptcy trustee was not to make any payments to Fleet until the amended claim was filed and the repair work commenced or paid for.
 

 On December 21, 1984, Fleet filed a motion to dismiss Hubbard’s bankruptcy case for nonpayment. In response, Hubbard filed a motion for civil contempt, alleging that Fleet had not complied with the April 4th order and that the house remained uninhabitable. Fleet did not file an amended proof of claim until more than one year after the order, on May 16, 1985.
 

 At a hearing on the motions, the trustee testified that Hubbard had made regular payments to him as required by his Chapter 13 plan, and that all other creditors had been paid. The trustee had not paid Fleet because the April 4th court order directed him not to do so until Fleet complied with the terms of that order.
 

 Testimony at the hearing established that Fleet had hired its own contractor to do the work on Hubbard’s house and that the cost to Fleet was considerably lower than that estimated by Hubbard’s contractor. Fleet did not make any attempt to notify Hubbard that the work was being done, much less to find out whether it was done to his satisfaction. At the time of the hearing, neither water nor gas could be turned on because of burst or leaking pipes. There was also testimony about repairs badly done and major appliances and window air conditioners that were missing or inoperable. Hubbard testified that he had incurred rental expenses of $200 per month since his eviction in 1982.
 

 In an order issued on September 26, 1985, the bankruptcy judge denied Fleet’s motion to dismiss and certified the contempt motion to the district court under Bankruptcy Rule 9020, recommending that the district court find Fleet in criminal contempt, fine it $7,649.80, grant Hubbard $750 in attorney’s fees, and release the deed of trust lien. The district court adopted these recommendations.
 

 Fleet first argues that it was error for the bankruptcy court to deny its motion to dismiss for nonpayment, because Hubbard had not made any payments for three years. Appeal of the denial of motion properly should have been made to the district court rather than to this court. This court lacks jurisdiction to hear the appeal.
 
 [3]
 
 Even if this court did have jurisdiction, Fleet’s argument is meritless.
 
 *781
 
 Fleet’s inability to obtain payment stems from its own continuing refusal to act in accordance with the orders of the bankruptcy court. Hubbard has complied with the requirements of his Chapter 13 plan and the trustee was not obligated to make payments to Fleet until it had complied with the settlement order.
 

 Fleet next asserts that in order to find a person in contempt of court it must be shown that he knowingly and willfully violated a specific court order.
 
 In re Weeks,
 
 570 F.2d 244, 245 n. 1 (8th Cir.1978);
 
 In re Tom Powell & Son, Inc.,
 
 22 B.R. 657, 661 (Bank.W.D.Mo.1982). “Willfulness” in contempt cases “ ‘means a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of any order.’ ”
 
 In re Mossie,
 
 589 F.Supp. 1397, 1409 (W.D.Mo.1984),
 
 rev’d on other grounds,
 
 768 F.2d 985 (8th Cir.1985) (quoting
 
 Falstaff Brewing Corp. v. Miller Brewing Co.,
 
 702 F.2d 770, 782 (9th Cir.1983)). Willfullness may be inferred from the evidence.
 
 In re Mossie,
 
 589 F.Supp. at 1409. Fleet argues that the violation was not intentional, and that it was merely a disagreement over what constituted “reasonable satisfaction” with the repair job. However, elsewhere in the brief Fleet admits the house “remained unrepaired and perhaps even uninhabitable.” Contrary to Fleet’s arguments, there was substantial evidence that it intentionally disregarded the court order.
 

 Fleet also contends that this was a civil contempt matter, not a criminal one, and that the penalty imposed was excessive given the compensatory purpose of civil contempt. The bankruptcy court’s order stated that it was certifying the matter to the district court for the issuance of a contempt order because the fine recommended “would be in the nature of a criminal contempt action,” and Bankruptcy Rule 9020
 
 [4]
 
 requires certification of criminal con-tempts.
 

 There is considerable confusion in the courts over the distinction between civil and criminal contempt, and the Supreme Court has said that the words used by the lower court to describe the contempt are not determinative.
 
 Shillitani v. United States,
 
 384 U.S. 364, 369, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966). The same actions by a party can amount to both civil and criminal contempt.
 
 United States v. United Mine Workers,
 
 330 U.S. 258, 299, 67 S.Ct. 677, 698-99, 91 L.Ed. 884 (1947). It is the nature and purpose of the punishment that is determinative.
 
 Id.
 
 at 297 n. 64, 67 S.Ct. at 698 n. 64 (quoting
 
 Gompers v. Buck’s Stove and Range Co.,
 
 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911)). The commonly stated distinction is that if the penalty is to compensate the complaining party or to coerce the defendant into complying with the court’s orders, the contempt is civil, while if the penalty is punitive, intended to vindicate the authority
 
 *782
 
 of the court, then the contempt is criminal.
 
 United Mine Workers,
 
 330 U.S. at 302-04, 67 S.Ct. at 700-02.
 

 In Fleet’s case, the bankruptcy judge ended the hearing by saying that he was disallowing the claim “as punishment for what I perceive to be deliberate violation of the Court’s order for the second time.” Transcript at 100. This language suggests that the judge wished to impose criminal contempt in order to vindicate the authority of the court. However, the form in which the penalty is imposed suggests that it is also designed to “benefit ... the complainant,”
 
 Gompers,
 
 221 U.S. at 441, 31 S.Ct. at 498. Although the better practice might have been to determine exactly what Hubbard's damages were as a result of Fleet’s misconduct, the court seemingly desired to compensate Hubbard by allowing him enough money to complete the repairs as well as additional money for the years of inconvenience he was forced to endure. Thus the penalty in this case seems to be of a dual nature, with both punitive and compensatory purposes. In contempt cases, the trial court has discretion to fashion the punishment to fit the circumstances.
 
 United Mine Workers,
 
 330 U.S. at 303, 67 S.Ct. at 701. We find no abuse of that discretion in the size of the penalty recommended by the bankruptcy court and imposed by the district court.
 

 Fleet also argues that the remedy imposed deprived it of property without due process. Fleet, however, did have notice of the claims against it and a full adversarial hearing on them. The Motion for Civil Contempt filed by Hubbard asked for “damages and attorney’s fees ... and such other relief as is just.” As noted above, the trial court has discretion to fashion the relief, and the party to be held in contempt does not have to have detailed notice of the relief that may be granted.
 

 The order of the district court is affirmed.
 

 [1]
 

 . The Honorable William R. Overton, United States District Judge for the Eastern District of Arkansas.
 

 [2]
 

 . The Honorable James G. Mixon, United States Bankruptcy Judge for the Eastern District of Arkansas.
 

 [3]
 

 . The courts of appeals apparently do not have jurisdiction to hear any direct appeals from the bankruptcy courts since the enactment of 28 U.S.C.A. § 158 in 1984. That provision states, in part:
 

 (a) The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.
 

 [[Image here]]
 

 (d) The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) [dealing with bankruptcy appellate panels] of this section.
 

 Id.
 

 28 U.S.C. § 1293(b), which was enacted as part of the 1978 Bankruptcy Code and which, prior to the enaction of 28 U.S.C. § 158, was to determine where the proper appeal lay, allowed direct appeals from bankruptcy courts to the courts of appeals by agreement of the parties. Although there is a conflict between two sections of the Bankruptcy Amendments and Federal Judgeship Act of 1984 which creates some question as to whether § 1293(b) is still effective, it seems fairly clear that Congress intended to make it ineffective.
 
 See In re General Coffee Corp.,
 
 758 F.2d 1406, 1408-09 (11th Cir.1985) (per curiam). In any case, there was no agreement of the parties here, and thus, this court has no jurisdiction in this matter.
 

 [4]
 

 . Rule 9020(a)(3) requires the bankruptcy court to certify facts to the district court for punishment of a criminal contempt committed outside the presence of the judge:
 

 (3) Certification to District Court. If it appears to a bankruptcy judge that criminal contempt has occurred but the court is without power under 28 U.S.C. § 1481, to punish or to impose the appropriate punishment for the criminal contempt the judge may certify the facts to the district court.
 

 Former 28 U.S.C.A. § 1481 provided:
 

 A bankruptcy court shall have the powers of a court of equity, law, and admiralty, but may not enjoin another court or punish a criminal contempt not committed in the presence of the judge of the court or warranting a punishment of imprisonment.
 

 The Rule 9020(a)(3) procedure was followed in this case, so there is no question of the bankruptcy court exceeding its jurisdiction even if this matter is a criminal, not civil, contempt. However, it should be noted that since the passage of the Bankruptcy Amendments and Federal Judgeship Act of 1984, 28 U.S.C.A. § 1481 has been declared ineffective. (Pub.L. No. 98-353 (1984)). The Judicial Conference has proposed a completely different Rule 9020, which would require all motions for contempt of the bankruptcy court, civil or criminal, to be brought before the district court. Committee on Rules of Practice and Procedure of the Judicial Conference of the United States,
 
 Preliminary Draft of Proposed Bankruptcy Rules and Official Forms
 
 (1986).