_____

No. 95-2430
_____

William Randall Wright,         *
Trustee,                        *
                                *
          Appellee,             *
                                *
    v.                          *  Appeal from the United States
                                *  District Court for the
Denitia Nichols,                *  Western District of Arkansas.
                                *
          Appellant,            *
                                *
Gary Joe Dean; Lucille M. Dean, *
                                *
          Debtors.              *

_____

            Submitted:  January 9, 1996

              Filed:  April 10, 1996
_____

Before RICHARD S. ARNOLD, Chief Judge, BOWMAN, Circuit Judge, and JONES,[*]
     District Judge.

_____

BOWMAN, Circuit Judge.

     Denitia Nichols appeals from the order of the District Court[1] finding
her in criminal contempt of the Bankruptcy Court.[2]  We affirm.

_____

     [*]The HONORABLE JOHN B. JONES, United States District
     Judge for the District of South Dakota, sitting by
     designation.

     [1]The Honorable Harry F. Barnes, United States District Judge
for the Western District of Arkansas.

     [2]The Honorable James G. Mixon, United States Bankruptcy
Judge for the Western District of Arkansas.

We do not have before us a full explanation of the relationship among the players involved in this case, nor do we need one. We do know that the underlying bankruptcy was a Chapter 7 filing by Gary Joe Dean and Lucille M. Dean. Among the persons and entities involved are a company known as Hi-Tech Coatings, Inc., actually found by the Bankruptcy Court to be the property of the debtors, and Nichols, who at times relevant to this appeal was serving as Hi-Tech's president. In an adversary proceeding brought by the Trustee on behalf of the Deans and Hi-Tech, the Bankruptcy Court entered a temporary restraining order (TRO) against Nichols, among others, on February 12, 1993. The court ordered that Nichols and Robert J. Johnson, an attorney (for whom Nichols worked as legal secretary, according to counsel for the Trustee), be "restrained from removing any funds from any accounts held in the name of Hi-Tech Coatings, Inc. or for its benefit and [that Nichols and Johnson] shall immediately cease and desist from any activity that would cause removal of any funds from the accounts of Hi-Tech Coatings, Inc. or disposing of any assets of Hi-Tech Coatings, Inc." Temporary Restraining Order at 1-2. By consent order entered March 23, 1993, the TRO was continued.

On June 24, 1993, William E. Johnson (not to be confused with Robert J. Johnson), the attorney who had represented Nichols and Robert J. Johnson in related proceedings in chancery court and also in the Trustee's adversary proceeding in Bankruptcy Court beginning February 1993 until he withdrew in April or early May 1993, delivered a check for $6733.13 to Billy J. Hubbell, who had replaced Johnson in representing Nichols. The check was made payable to "Hi-Tech Coatings, Inc. & Billy J. Hubbell, their atty." and was for a refund of unearned advanced fees that had been paid to Johnson by Hi-Tech. Nichols endorsed the check as president of Hi-Tech and left it with Hubbell, who deposited it.

When the Trustee discovered what Nichols had done with the Johnson check, and believing that Nichols was violating the TRO in

other ways, he asked the Bankruptcy Court to sanction her.  On February 10, 1994, a hearing was held on the motion for sanctions, and the Bankruptcy Court indicated its inclination to find Nichols in criminal contempt, expressing some frustration at the course of events:  "This is exactly the way she did through all these months and months and months, when she was looting Mr. Dean's corporation, taking the money that he made, he earned, and lavishing herself and Mr. [Robert] Johnson with these proceeds of this fraud."  Transcript of Hearing on Motion for Sanctions at 71.  On August 18, 1994, the Bankruptcy Court held a show-cause hearing, giving the parties an opportunity to supplement the record, with Nichols fully aware that the court was planning to issue an order of criminal contempt unless she could show cause why it should not do so.  No additional testimony was offered and the Bankruptcy Court found Nichols in criminal contempt.  On May 8, 1995, the District Court held a hearing on Nichols's objections to the order, taking Hubbell's testimony as a supplement to the record on the motion for sanctions from the Bankruptcy Court.  After de novo review, the District Court issued an order of contempt against Nichols and accepted the Bankruptcy Court's recommendation of a sentence of thirty days incarceration.  Nichols appeals.

We review the District Court's decision to enter a contempt order for abuse of discretion, giving plenary review to conclusions of law and reviewing factual findings for clear error.  See Wycoff v. Hedgepeth, 34 F.3d 614, 616 (8th Cir. 1994) (enunciating abuse of discretion standard in review of denial of order of civil contempt); see also, e.g., United States v. Winter, 70 F.3d 655, 659 (1st Cir. 1995), cert. denied, No. 95-8140, 1996 WL 105816 (U.S. Apr. 1, 1996); F.D.I.C. v. LeGrand, 43 F.3d 163, 166 (5th Cir. 1995).  Because this is a case of criminal contempt, we will reverse for abuse of discretion if we do not find that Nichols's behavior constituted contempt beyond a reasonable doubt.  International Union, United Mine Workers of Am. v. Bagwell, ___ U.S. ___, ___, 114 S. Ct. 2552, 2561 (1994).

Nichols argues that her endorsement of the check was not a knowing and willful violation of the TRO, required to sustain the judgment of criminal contempt, because she was relying on the advice of counsel when she signed over the check. We shall assume without deciding that reliance on the advice of counsel is a defense to an act of criminal contempt (although good faith reliance on such advice would be difficult to show where, as here, counsel benefits from the contemptuous act). But see United States v. Di Mauro, 441 F.2d 428, 437 (8th Cir. 1971) (holding that reliance on advice of counsel is no defense where contemnors refused to testify in criminal trial despite being given immunity). We need not reach the legal question, for Nichols's claim that she relied on the advice of counsel is, to put it charitably, not supported by the record. Contrary to Nichols's bald assertions in her brief that she relied on the advice of counsel, neither Nichols nor Hubbell testified that they discussed with each other whether or not the endorsement by Nichols would violate the TRO. When asked in the initial hearing before the Bankruptcy Court "what discussions" Nichols had with Hubbell "concerning what you should do with this check," Nichols responded:

> He brought the check--we were down--he came down to my office and we talked about it. And because it was the transfer of that unused portion that was ordered paid to Mr. Johnson by [Chancery Court] Judge Vittitow, I signed the check to apply it for his attorney fees, since he was representing me now. Then.

Transcript of Hearing on Motion for Sanctions at 11-12. Nichols never said that she sought or that Hubbell offered advice on whether negotiating the check so that Hubbell might deposit it into his own account would violate the TRO. It would be far too generous an interpretation of the phrase "talked about" to assume Nichols intended to say that Hubbell gave her advice about the check and the TRO, upon which she then acted. In any event, Hubbell's subsequent testimony before the District Court leaves no

room for such a liberal reading of "talked about." When asked if he had "any discussions with Denitia Nichols as to whether or not the--her endorsing the check and turning the funds over to you would violate the terms of the TRO," Hubbell said:

> I don't think--no, I didn't discuss that with her because I didn't think it did. I mean, my concern was that there might be a turnover order or an order that was a preferential transfer which would have to repaid [sic] but never, it just didn't--I didn't think it violated the Temporary Restraining Order.

Transcript of Hearing on Order of Criminal Contempt at 9 (the same page to which Nichols's brief disingenuously refers in claiming that "[c]ounsel then advised Nichols that she would not be violating the restraining order if she endorsed the check to attorney Hubbell," Brief of Appellant at 6). We do not see how it is possible to prevail in a criminal contempt case with a defense of reliance on the advice of counsel when the party seeking to avoid being held in contempt neither sought nor received the advice of counsel on whether the behavior at issue would violate the court order in question.

More generally, Nichols argues that she did not know, or even consider, that her endorsement of the check could be a violation of the TRO and, therefore, that her violation of the order was not willful. In the context of criminal contempt, willfulness "means a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of any order," and the necessary intent "may be inferred from the evidence." Hubbard v. Fleet Mortgage Co., 810 F.2d 778, 781 (8th Cir. 1987) (citations to quoted cases omitted). Our review of the record convinces us that Nichols's endorsement of the check was an act of criminal contempt, as it was "a volitional act done by one who knows or should reasonably be aware that [her] conduct is wrongful." In re Holloway, 995 F.2d 1080, 1082 (D.C. Cir. 1993) (emphasis omitted

and alteration added) (quoting <u>United States v. Greyhound Corp.</u>, 508 F.2d 529, 531-32 (7th Cir. 1974) (citation to quoted case omitted)), <u>cert. denied</u>, ___ U.S. ___, 114 S. Ct. 1537 (1994).

The Bankruptcy Court did "not credit [Nichols's] explanation . . . that she didn't understand that this was Hi-Tech's money." Transcript of Hearing on Motion for Sanctions at 69. Given the undisputed facts in the record, neither do we. The check was made payable to Hi-Tech, not to Denitia Nichols. A note on the check indicated it was a "refund"--of funds originally paid not by Denitia Nichols but by Hi-Tech. As with any accounts payable, the check was an asset of the company, as anyone in the position Nichols held reasonably should have known.[3] Nichols was president of the company, and had been operating Hi-Tech for more than four months under a court order not to remove funds from or to dispose of the assets of Hi-Tech. We agree with the courts below that, whether or not Nichols (or Hubbell) considered the endorsement a violation of the TRO, she reasonably should have known it was.

Moreover, the District Court had other reasons for concluding that Nichols's behavior was willful. As noted above, the Bankruptcy Court was on the record as having found a pattern of "looting" of Hi-Tech assets by Nichols. The analysis of whether

_____

[3]At oral argument, Hubbell claimed that Nichols's endorsement of the check was not a violation of the TRO in the first instance because the check was not an asset of Hi-Tech. It is true that the original fee paid to William Johnson arguably was paid before the TRO was in place, although the hearing transcript from the Bankruptcy Court indicates that there was an issue about when the last of the payments was made, and counsel advised the Court at oral argument that the Trustee in fact had settled with William E. Johnson to recover at least a portion of those funds. But the timing of the payments to Johnson does not change the fact that they were made from a Hi-Tech account, and thus the "refund" also was of Hi-Tech funds. Moreover, regardless of when the payments to Johnson were made, the refund was made **after** the TRO was entered, and the check was made payable to Hi-Tech. We reject the argument that the refund check was not an asset of Hi-Tech.

Nichols's violation of the TRO was willful "properly encompasses the contemnor's behavior in related incidents such as disobedience or resistance to other orders of the court." In re Holloway, 995 F.2d at 1082. Further, Hubbell testified that he and Nichols did discuss the possibility of a preferential transfer and turnover of the funds, so it strains credulity to think that it never occurred to either of them that the endorsement also would violate the TRO.

"The facts cannot possibly be fitted into the pattern of an innocent stumbling into an unintended transgression." United States v. Prugh, 479 F.2d 611, 612 (8th Cir. 1973) (quoting United States v. Custer Channel Wing Corp., 376 F.2d 675, 682 (4th Cir.), cert. denied, 389 U.S. 850 (1967)). Well known to Nichols, the restraining order was issued in the first place for a reason--her previous contumacious conduct involving the assets of Hi-Tech. Nichols clearly was on notice that her actions relating to the assets of Hi-Tech (and a check made out to Hi-Tech, no matter what the check was for, clearly put Nichols on notice that it was an asset of the company) would be subject to scrutiny under the terms of the TRO.[4] We hold that the evidence establishes beyond a reasonable doubt that Nichols's behavior in endorsing the check was neither accidental, inadvertent, nor negligent, and thus that she willfully violated the TRO. The District Court did not abuse its discretion in holding her in criminal contempt of the Bankruptcy Court.

Nichols also contends, in an argument not raised in the District Court, that the courts below erred in allowing counsel for the Trustee to "prosecute" Nichols for criminal contempt. An issue

_____

[4]We note that, although Nichols makes much of the fact that Johnson was paid with Hi-Tech funds with the permission of Chancery Court Judge Vittitow, which permission he gave in a related state court proceeding, Judge Vittitow himself was restrained from all further actions in that related proceeding by the same TRO under which Nichols was restrained.

-7-

not timely raised in the district court ordinarily is forfeited. United States v. Olano, 507 U.S. 725, ___ , 113 S. Ct. 1770, 1776 (1993). We may consider the issue, however, if there is plain error affecting the defendant's substantial rights, that is, plain error shown by the defendant to be prejudicial, and we should reverse "if the error `seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" Id. at ___ , 113 S. Ct. at 1778, 1779 (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)). Nichols has not met her burden of showing that the actions of counsel for the trustee resulted in plain error, much less that they affected her substantial rights such that reversal is required.

In support of her argument, Nichols relies upon Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787 (1987), a case that is easily distinguished. In Young, an injunction was issued prohibiting certain individuals from manufacturing and distributing imitation Vuitton products. Subsequently, lawyers for Vuitton asked the district court to appoint them as special counsel to prosecute the individuals against whom the injunction was issued for criminal contempt for alleged violations of the injunction. The court did so. The Supreme Court held "that counsel for a party that is the beneficiary of a court order may not be appointed as prosecutor in a contempt action alleging a violation of that order." Id. at 809. The Trustee here originally sought sanctions against Nichols for violating the TRO in a civil proceeding, but he did not initiate proceedings for criminal contempt, that is, neither he nor his attorney prosecuted Nichols, and no one appointed either of them to prosecute the criminal contempt. The Bankruptcy Court sua sponte, for reasons related to Nichols's ongoing contumacious conduct in that court, decided to order Nichols to show cause why she should not be held in criminal contempt of its restraining order. Based in part on the record in the civil proceeding, and without objection to that procedure, the Bankruptcy Court concluded Nichols was in criminal contempt. To

this point in the proceedings, it is clear there is no error of any kind in the procedure employed.  Although it is not apparent to us why the Trustee then defended the contempt order against Nichols's objections in the District Court and on Nichols's appeal to this Court, it appears from the record that Nichols acquiesced in that procedure in the District Court and until she filed her brief in the present appeal.  We cannot say that Nichols has demonstrated, at this late date, plain error that would warrant reversal.

The judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.