# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 04-1689

_____

| | | |
|---|---|---|
| In re: Application to Adjudge Brent Medlock in Criminal Contempt | * | |
| _____ | * | |
| | * | |
| | * | |
| C.H. Robinson Company; C.H. Robinson Worldwide, Inc., | * | |
| | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the Western |
| v. | * | District of Arkansas. |
| | * | |
| Medco, Inc., also known as Brent Medlock; Medco Forwarding, Inc., also known as Brent Medlock, | * | |
| | * | |
| | * | |
| | * | |
| Defendants, | * | |
| | * | |
| Brent Medlock, also known as Douglas Brent Medlock, | * | |
| | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: January 13, 2005 (Corrected 5/23/05)
Filed:  May 11, 2005

_____

Before MELLOY, SMITH, and COLLOTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

The district court[1] found Brent Medlock ("Medlock") guilty of criminal contempt for failing to follow court orders to appear in court, provide discovery, and assemble assets. On appeal, Medlock contends that there was insufficient evidence to convict, that his due process rights were violated, and that his sentence is excessive. We affirm.

## I.    Background

Medlock was the president and sole shareholder of trucking companies Medco Forwarding, Inc. and Medco, Inc. (collectively "Medco"). C.H. Robinson Company and C.H. Robinson Worldwide, Inc. (collectively "Robinson") brought suit against Medco in the United States District Court for the Southern District of Texas. On February 5, 2003, Robinson obtained a default judgment against Medco in the amount of $44,814.70 plus costs and interest. The judgment was registered in the United States District Court for the Western District of Arkansas and a Writ of Execution (the "Writ") was filed on June 6 and sent to Medco. United States Deputy Marshal Mike Blevins ("Deputy Blevins") also personally served Brent Medlock, the sole shareholder and president of Medco, with the Writ at Medlock's place of business in Alma, Arkansas on June 9, 2003. Deputy Blevins asked Medlock to the pay the judgment, and Medlock responded that Medco no longer existed and had no money. Deputy Blevins asked Medlock to provide lien and registration information for the

_____

[1]The Honorable Robert T. Dawson, United States District Court Judge for the Western District of Arkansas.

business entity he was currently operating. Medlock responded that he would have to discuss the matter with his attorney.

Deputy Blevins returned to Medlock's place of business on June 13 and again requested documentation. Medlock told Deputy Blevins that his attorney had told him not to provide the information that Deputy Blevins requested. Deputy Blevins informed Medlock that individuals at the Marshals Service had discovered several trucks and trailers registered to Medco. Medlock stated again that Medco no longer existed and that all of the trucks and trailers were operated under a limited liability company.

Several days later, Deputy Blevins telephoned Medlock's attorney. She informed him that she no longer represented Medlock. Deputy Blevins called Medlock a few days later, again requesting certain documentation. Medlock told Deputy Blevins that his new attorney, Don Jenkins ("Jenkins"), had advised him not to provide anything. Deputy Blevins never received any of the documentation that he requested about Medlock's property or business entities.

On June 26, 2003, Medco filed a Motion to Quash Writ of Execution pursuant to 28 U.S.C. § 3202(d). On August 27, 2003, the trial court denied Medco's motion and allowed Medco ten days to seek relief from the judgment. Medco did not pursue relief from the judgment for damages.

On October 10, 2003, Robinson filed a Request for Production of Documents (the "Request") in an effort to identify assets owned by Medco. Robinson's counsel served a copy of the Request on Jenkins, and Medlock admits he received the Request. Robinson did not receive a response by the November 12 date such response was due. On November 20, 2003, Robinson filed a Motion to Compel.

On December 9, 2003, the district court entered an order directing Medco to respond to the discovery request by the close of business on December 11. On December 18, Medco filed a Motion for Additional Time to Comply with Discovery Order or in the Alternative to Withdraw as Counsel. In the motion, Jenkins stated that the defendants had "systematically failed to communicate or respond to counsel communications" and that he therefore had been unable to respond to the plaintiffs' discovery requests. Jenkins also requested to withdraw from the case.

On December 29, 2003, the district court denied Medco's motion in its entirety. The order also stated:

> [A] hearing to show cause why Defendants should not be held in contempt of court is hereby scheduled for TUESDAY, JANUARY 13, 2004, AT 9:30 A.M. Defendants are ordered to personally appear at the hearing along with defense counsel. Defendants are advised that upon their failure to appear and upon motion by Plaintiff's counsel, sanctions may issue pursuant to Federal Rule of Civil Procedure 37(b).

On January 6, 2004, Jenkins sent a Response to Request for Production of Documents to Robinson, however, none of the information requested was contained in the response. Most of the answers in the response stated "not applicable."

On the morning of January 13, the district court convened the show cause hearing. The court noted that Jenkins, Medco's counsel, was in attendance, but that no defendant was present, as required by the December 29 order. Jenkins stated that he had been trying to reach Medlock since 8:00 a.m. that morning, but had not been successful. The district court judge ordered marshals to pick up Medlock and bring him to court.

United States Deputy Marshal Dave Cook ("Deputy Cook"), along with a member of the local police department, went to Medlock's home. They knocked on

several doors and received no response. They noted that a back door was ajar. Deputy Cook and the police officer called one of Medlock's employees, who came to the home and entered through the ajar door. After ten to twelve minutes, the employee returned outside and reported that Medlock did not want to come out until Jenkins arrived. Jenkins arrived at the residence approximately thirty minutes later. He entered the home and remained inside for ten to fifteen minutes. Jenkins and Medlock then left the residence and went to court.

Medlock appeared in court at 11:40 a.m. The district court asked why he had not appeared at the appointed time, and Medlock answered that it was an oversight. Medlock said that his businesses were in financial trouble and that he had not been taking care of business as he should have. Turning to the subject of the hearing, Robinson detailed their failed attempts to procure information from Medco. Medlock explained that he did not respond to their requests because Medco no longer existed and had no funds or assets. Robinson presented evidence that, according to the Arkansas Department of Revenue, there were eleven tractors and trailers registered under the name Medco, Inc. At the conclusion of the hearing, the district court ordered Medlock to produce the eleven tractor/trailer units to the Medco terminal in Alma, Arkansas by noon on January 20, 2004. The court set a hearing for 3:00 p.m. on January 20 and ordered Medlock and his wife to appear. The court also ordered Medlock to provide certain documentation to Robinson within forty-eight hours.

Medlock provided documents to Robinson on January 15 and 16, 2004. On January 19, Medco filed for Chapter 7 Bankruptcy protection. This action caused an automatic stay on other actions against Medco. On January 20, Medco filed the bankruptcy petition with the district court. The court noted that the same entities that Medlock had testified were no longer in existence were now filing for bankruptcy. The court also expressed concern that, while a stay was in place beginning when Medco filed for bankruptcy, there had been nothing done prior to that time in an attempt to comply with the court's order to produce the tractor/trailer units. Jenkins

admitted that, after the January 13 hearing, Medlock told him that if the truckers were pulled out of service, Medco would have nothing. He stated that, at the time, he and his client made the decision to file for bankruptcy. United States Deputy Marshal Mark Spellman testified that two tractor/trailer units were at the Medco terminal. Jenkins states that the remainder of the units were still in service, on the road. The district court set a criminal contempt hearing for February 17, 2004.

On February 4, the district court issued an Order to Show Cause, stating grounds for contempt:

> (1) Stifling the United States Marshal Service's performance of a Writ of Execution;
> (2) Failing to respond to Request for Production of Documents by December 11, 2003;
> (3) Failure to appear at the January 13, 2004 hearing; and
> (4) Failure to comply with the Court's Order of January 13, requiring Medlock to furnish documents and assemble tractor and trailer units.

At the February 17 hearing, Deputies Blevin, Cook, and Spellman testified as to their dealings with Medlock. Medlock took the stand and admitted he had not complied with any of the court's orders. He stated that he did not understand the seriousness of the judgment and the Writ of Execution. He admitted that he did not tell the tractor/trailer drivers to drive their rigs to Alma, though he could have done so. He stated that his attorney had advised him he did not have to produce the tractor/trailer units because of the bankruptcy. The district court adjudged Medlock in criminal contempt of court in a March 5, 2004 order. On March 11, the court sentenced Medlock to a term of imprisonment of fifteen days and a fine of $10,000.

## II.    Standard of Review

"We review the District Court's decision to enter a contempt order for abuse of discretion, giving plenary review to conclusions of law and reviewing factual findings for clear error." Wright v. Nichols, 80 F.3d 1248, 1250 (8th Cir. 1996).

## III.    Discussion

On appeal, Medlock raises four arguments: (A) the district court's December 29 order was not sufficiently specific to be enforceable, (B) Medlock did not willfully disobey the district court's orders, (C) the district court violated his due process rights by trying him for criminal contempt before Judge Dawson, and (D) the district court abused its discretion when it sentenced Medlock to fifteen days imprisonment and a $10,000 fine. We will address each argument in turn.

### A.    The District Court's Order was Sufficiently Specific to be enforceable.

As stated above, the December 29, 2003 order stated that:

[A] hearing to show cause why Defendants should not be held in contempt of court is hereby scheduled for TUESDAY, JANUARY 13, 2004, AT 9:30 A.M. Defendants are ordered to personally appear at the hearing along with defense counsel. Defendants are advised that upon their failure to appear and upon motion by Plaintiff's counsel, sanctions may issue pursuant to Federal Rule of Civil Procedure 37(b).

An individual may not be held in contempt for violating an order unless the order is "sufficiently specific to be enforceable." Finney v. Arkansas Bd. of Correction, 505 F.2d 194, 213 (8th Cir.1974); see also Hazen v. Reagen 16 F.3d 921, 924-25 (8th Cir. 1994). Medlock argues that this order was not specific because it did

not name him, but only said that "defendants" must personally appear. We agree with the district court that Medlock knew he was the representative for Medco and therefore reasonably should have known that his presence in court was required by the order. Medlock was the president and sole shareholder for Medco, Inc. and the individual who initiated the name reservation for Medco Forwarding, Inc. Medlock regularly acted on behalf of Medco in communicating with attorneys and the Marshals Service and appearing in court. Given these facts the court was well within its authority to sanction him for his violation of the court order. See Chicago Truck Drivers v. Brotherhood Labor Leasing, 207 F.3d 500, 507 (8th Cir. 2000) (finding orders were binding upon an individual who was a shareholder, corporate officer, and agent of the party, "even though the orders made no specific reference to him"). In addition, he implicitly acknowledged his duty to appear in his responses to the court's questions about his failure to do so when he stated that his failure to appear was "an oversight."

## B. Medlock Willfully Disobeyed the Court's Orders.

"In the context of criminal contempt, willfulness 'means a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of any order.'" Wright, 80 F.3d at 1251 (quoting Hubbard v. Fleet Mortgage Co., 810 F.2d 778, 781 (8th Cir. 1987)). "Willfulness may be inferred from the evidence." Hubbard, 810 F.2d at 781.

Medlock admits that he had knowledge of the court orders that gave rise to the contempt action. He also admits that he disobeyed these orders. During the February 17 hearing to show cause, counsel for the government asked Medlock, "Just what is it that you've done in these proceedings that Judge Dawson asked you to do?" Medlock answered, "Nothing, sir." However, Medlock argues that the government failed to prove that he willfully violated any order of the district court.

-8-

### 1. Writ and Order to Compel Discovery

Medlock makes two arguments why his failure to provide payment or discovery as ordered was not willful. First, he contends that he is unsophisticated and did not understand that he needed to abide by the order. Second, Medlock argues that his was not a willful violation because he did eventually provide some of the requested documents. We find both arguments unpersuasive.

Medlock's argument that he is unsophisticated is unconvincing because Medlock was made aware of his obligations through several means. In addition, Medlock was represented by counsel and stated that he discussed his legal issues with his counsel. Under these circumstances, we find Medlock's failure to provide payment and discovery willful. Medlock was aware that an action against Medco had proceeded and that a default judgment had been entered. The Writ was sent to Medco and personally served on Medlock. On two occasions, Deputy Blevins visited Medlock and requested payment and information, and Medlock refused. Robinson later filed the Request and served a copy on both Medlock and his counsel. The due date for a response was November 12, 2003, and Medco failed to comply with the Request. On December 9, the district court ordered Medco to respond to the discovery request by December 11. Medco still failed to do so. A week past the deadline, Jenkins filed a Motion for Additional Time. In the motion, he stated that defendants had "systematically failed to communicate or respond to counsel communications."

Medlock argues that he did eventually respond to Robinson's discovery request. That response, however, was unsatisfactory. On January 6, Jenkins sent a response to the discovery request to Robinson. It contained virtually none of the information requested; most of the answers simply stated "not applicable." Under these facts, we find a willful violation of the court's order.

## 2.    Order to Appear and Show Cause

Medlock had knowledge of the Order to Appear and reasonably should have known his attendance was required, though he was not specifically mentioned in the order. He was the personal representative for the Medco entities in dealings with the court, attorneys, and the Marshals Service. In addition, Medlock's attorney stated that he had informed Medlock that Medlock was required to personally appear and that he had tried to contact Medlock at his home an hour and a half prior to the hearing to confirm his attendance. Further, even when a U.S. Marshal and police officer came to his home to collect him, he did not immediately go with them. Instead, he required the court to wait for an additional thirty minutes for his attorney to arrive and then another ten or fifteen minutes before he left his residence with his attorney. It is difficult to see how his failure to appear was not willful when he refused to go to court even when law enforcement personnel came to his home and asked him to come to court. Medlock points out that he did ultimately appear in court. However, we believe that because he required an escort and was over two hours late, the fact that he ultimately appeared does not cure his failure to appear for the hearing as scheduled.[2]

## C.    Due Process

Medlock contends that his due process right to be tried for contempt by an unbiased judge was violated because he was tried by the same judge before which the underlying putative contempt occurred. We agree with the Appellee that Medlock has waived this argument. 28 U.S.C. § 144 sets out the procedure to disqualify a judge for bias or prejudice. In order to do so, a party must "make[] and file[] a timely

---

[2]Because we find Medlock's failure to appear and failure to provide discovery were willful violations of court orders sufficient for the court to hold him in contempt, we need not address the issue of Medlock's failure to assemble the tractor/trailer units.

and sufficient affidavit . . . stat[ing] the facts and the reasons for the belief that bias or prejudice exists." Id. The affidavit must be filed within certain time limits. Id. "An affidavit must strictly comply with all of the statutory requirements before it will effectively disqualify a judge." United States v. Anderson, 433 F.2d 856, 859 (8th Cir. 1970); see also United States v. Young, 907 F.2d 867, 868 (8th Cir. 1990) ("The district court properly refused to recuse himself because Young's affidavit was untimely and legally insufficient."). Robinson argues, and Medlock does not dispute, that Medlock failed to comply with the statutory requirements. The issue is therefore waived. See Jones v. United States, 400 F.2d 892, 894 (8th Cir. 1968) (finding prejudice claim waived when defendant failed to comply with the 28 U.S.C. § 144 affidavit requirement).

**D.     The Sentence of Fifteen Days Imprisonment and a $10,000 Fine was Not Excessive.**

The district court sentenced Medlock to fifteen days imprisonment and a $10,000 fine. "In contempt cases, the trial court has discretion to fashion the punishment to fit the circumstances." Hubbard, 810 F.2d at 782. Whether a sentence for contempt is excessive is reviewed for an abuse of discretion. Green v. United States, 356 U.S. 165, 188 (1958). In this case, Medlock repeatedly failed to comply with court orders despite several opportunities to do so and despite the fact he was represented by counsel. He admitted that he had done nothing the district court had asked him to do. In light of these facts, we find the sentence of fifteen days imprisonment and a $10,000 fine was not excessive.

## IV.    Conclusion

For the above reasons, we affirm Medlock's criminal contempt conviction and sentence of fifteen days imprisonment and a $10,000 fine.

_____