In re Christine A. RAGAR, Debtor.

Robert J. BROWN, Appellant,

v.

Richard L. RAMSAY and A.L. Tenney, Trustee, Appellees.

No. 92–3007.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 23, 1993.

Decided Aug. 30, 1993.

Cheryl Fisher–Anderson, Little Rock, AR, argued for appellant.

No brief was filed and no argument was presented on behalf of the appellees.

Before RICHARD S. ARNOLD, Chief Judge, HEANEY, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

RICHARD S. ARNOLD, Chief Judge.

This is an appeal from an order of the District Court[1] holding the appellant, a lawyer, in criminal contempt of an order of the Bankruptcy Court.[2] The appellant argues that the procedure followed was not authorized by Congress and was, in any event, beyond the power of the Bankruptcy Court under Article III of the Constitution. We reject these arguments and affirm.

## I.

The appellant, Robert J. Brown, represented Christine Ragar in various matters, including a transfer of property worth about $100,000 from her husband to her. On February 14, 1991, she transferred that property to Brown's law firm. The transfer's purpose was to secure legal fees of about $10,000 that she owed the firm, with the remaining value to be held in trust for her creditors. On June 19, 1991, Brown filed on behalf of Ragar a voluntary petition for Chapter 13 reorganization. On August 6, 1991, the standing Chapter 13 trustee, A.L. Tenney, moved to disqualify Brown. Tenney alleged that Brown had a conflict of interest because he was a creditor of the debtor. He had a pre-petition claim for legal fees and a security interest in the property Ragar had transferred to his law firm.

On August 19, the Bankruptcy Court ordered Brown to show cause why he should not be disqualified from the case and why Ragar's Chapter 13 bankruptcy case should not be involuntarily converted to a Chapter 7 one. On September 6, 1991, Ragar asked the Court to dismiss her Chapter 13 case. At a hearing on September 9, the Court did not decide the motion to dismiss, but ruled orally that Brown was disqualified. App. 57–58. On September 11, the Court issued a written order ruling that "[f]or the reasons stated in open court, the Court finds that Crockett & Brown, P.A., are disqualified from representing the debtor in this case." App. 86. On the same day, despite Ragar's objection, the Court ordered that "[f]or the reasons stated in open court, the Court finds that this case should be converted to a case under Chapter 7." App. 63.

The Court disqualified Brown because the property he held was potentially property of Ragar's bankruptcy estate. The Court rec-

---

1. The Hon. Stephen M. Reasoner, Chief Judge, United States District Court for the Eastern District of Arkansas.

2. The Hon. James G. Mixon, United States Bankruptcy Judge for the Eastern and Western Districts of Arkansas. Since the entry of the order in question, Judge Mixon has become Chief Judge.

ognized that Ragar's estate might seek to avoid her transfer of the property to Brown, in order to benefit other creditors. The Court also noted another potential conflict, which later materialized. Brown became a co-defendant, along with his client, in a suit brought by Ragar's husband's bankruptcy estate claiming that her husband's earlier conveyance of this same property to her had been fraudulent. App. 57–60.

Despite the order of disqualification, Brown continued to represent Ragar and to file pleadings on her behalf. The Bankruptcy Court then ordered Brown to appear before it "to show cause why he should not be held in civil and/or criminal contempt of this Court for failure to comply with the Court's order entered on September 11, 1991, by continuing to represent the debtor in this proceeding." After a hearing, the Bankruptcy Court held Brown in criminal contempt of court because of his continued filings on Ragar's behalf. The Court assessed a fine of $950.

The Bankruptcy Court's order concluded as follows:

This order of contempt shall become effective as a final order ten days after service of the order on Brown unless, within the ten-day period, Brown serves and files with the bankruptcy clerk an objection to this order of contempt as provided by Federal Rule of Bankruptcy Procedure 9033(b).

If an objection is filed this Order shall be subject to review by the District Court pursuant to Federal Rule of Bankruptcy Procedure 9003.

*In re Christine A. Ragar,* 140 B.R. 889, 891 (Bankr.E.D.Ark., 1992).

Brown did file timely objections. In due course the District Court entered the following order:

The Court has received Proposed Findings of Fact and Conclusions of Law in a Non–Core Proceeding from the Honorable James G. Mixon, United States Bankruptcy Judge. Having carefully reviewed the Proposed Findings and the Objections filed on April 27, 1992, the Court finds that the Bankruptcy Judge's Proposed Findings should be adopted in their entirety.

Accordingly, Robert J. Brown, Esq., is found in contempt and is assessed a fine in the sum of $950.00.

*In re Christine A. Ragar,* No. LR–C–92–308 (E.D.Ark., order filed July 31, 1992). This appeal followed.

## II.

■ The major point urged by Brown on this appeal is that bankruptcy courts have no criminal-contempt power. No statute gives them that power, he says, and, if one did, it would violate the Constitution by attempting to entrust a share of the judicial power of the United States to non-Article III judges. These arguments raise questions that have divided the Circuits. *In re Hipp, Inc.,* 895 F.2d 1503 (5th Cir.1990) (bankruptcy courts have no criminal-contempt power, at least as to contempts not committed in or near their presence, because no statute confers that power; constitutional issue serious but need not be resolved, *id.* at 1511), and *In re Sequoia Auto Brokers Ltd., Inc.,* 827 F.2d 1281 (9th Cir.1987) (no statute gives bankruptcy courts civil-contempt power; constitutional question not reached, *id.* at 1290 n. 15), point towards Brown's side of the argument. *In re Skinner,* 917 F.2d 444 (10th Cir.1990) (11 U.S.C. § 105 gives bankruptcy courts civil-contempt power; no constitutional violation), and *In re Walters,* 868 F.2d 665 (4th Cir. 1989) (same), look the other way.

It is important to place the issue in the precise procedural context of the present case. The Bankruptcy Court here did not simply enter its own judgment of criminal contempt effective immediately of its own force and subject to review only by appeal to the District Court. (That is, incidentally, what the Bankruptcy Court did in the Ninth Circuit case, *In re Sequoia Auto Brokers, Ltd., Inc., supra,* 827 F.2d at 1283.) It entered an order holding Brown in criminal contempt, but the order had no immediate effect. It provided by its own terms that if Brown filed objections within ten days the order would be reviewed de novo by the District Court under Bankr.Rule 9033(d). The Bankruptcy Court, therefore, viewed it-

self not as exercising the criminal-contempt power directly, but as making proposed findings of fact and conclusions of law in a non-core proceeding.[3] See Bankr.R. 9033(a).[4] Its action would have become final and effective if Brown had not filed timely objections, see Bankr.R. 9033(b), but Brown did file such objections. The District Court then conducted a de novo review on the record, which is what Brown asked it to do. Add. 1. The District Court had authority to "receive further evidence," Bankr.R. 9033(d), but Brown did not ask for this.

Thus, the Bankruptcy Court here acted much as a magistrate judge would have on a matter lawfully assigned to him or her for a report and recommendation under 28 U.S.C. § 636. For reasons shortly to be given, we think Congress has authorized the bankruptcy courts to go at least this far, and that such action is not contrary to Article III. Whether·they could enter their own criminal-con-

tempt judgments, subject to review only by appeal, is a question not presented by this case, and we therefore do not reach it.

 In our view, 11 U.S.C. § 105(a) is a clear delegation of authority from Congress to do what the Bankruptcy Court did here. That statute provides as follows:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

The plain meaning of the statute authorizes at least as much as what was done here. The Court took action to enforce or imple-

---

3. The underlying Ch. 13 and Ch. 7 proceedings were of course core proceedings. See 28 U.S.C. § 157(b). Both the Bankruptcy Court and the District Court treated the contempt matter as a non-core proceeding. We proceed on that assumption, and intimate no view as to whether the courts below could lawfully have treated the contempt matter as a core proceeding. In core proceedings, bankruptcy courts hear and determine the case as free-standing courts, subject to appeal to the district courts or a bankruptcy appellate panel, 28 U.S.C. § 158. In non-core proceedings (an example would be an adversary proceeding brought by the debtor's estate to collect a pre-petition claim arising under state law), bankruptcy judges may conduct a hearing, but may only submit proposed findings of fact and conclusions of law to a district court, which then conducts a de novo review and enters any final order or judgment. The distinction has been basic to the jurisdiction of the bankruptcy courts since the Bankruptcy Amendments of 1984, Pub.L. No: 98–353, 98 Stat. 340 (1984).

4. Bankruptcy Rule 9033 reads as follows:
 Rule 9033. Review of Proposed Findings of Fact and Conclusions of Law in Non–Core Proceedings
 (a) Service
 In non-core proceedings heard pursuant to 28 U.S.C. § 157(c)(1), the bankruptcy judge shall file proposed findings of fact and conclusions of law. The clerk shall serve forthwith copies on all parties by mail and note the date of mailing on the docket.
 (b) Objections: time for filing
 Within 10 days after being served with a copy of the proposed findings of fact and con-

clusions of law a party may serve and file with the clerk written objections which identify the specific proposed findings or conclusions objected to and state the grounds for such objection. A party may respond to another party's objections within 10 days after being served with a copy thereof. A party objecting to the bankruptcy judge's proposed findings or conclusions shall arrange promptly for the transcription of the record, or such portions of it as all parties may agree upon or the bankruptcy judge deems sufficient, unless the district judge otherwise directs.
 (c) Extension of time
 The bankruptcy judge may for cause extend the time for filing objections by any party for a period not to exceed 20 days from the expiration of the time otherwise prescribed by this rule. A request to extend the time for filing objections must be made before the time for filing objections has expired, except that a request made no more than 20 days after the expiration of the time for filing objections may be granted upon a showing of excusable neglect.
 (d) Standard of review
 The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions.

ment its order of disqualification. Further, its order adjudging Brown in contempt, subject to Rule 9033 review, was, in the Court's judgment, necessary or appropriate to carry out the provisions of Title 11. We recognize that this conclusion places us at odds with *In re Hipp, Inc., supra,* where the Fifth Circuit said that "[c]riminal contempt is not 'necessary or appropriate to enforce or implement' the court's rules or orders, but is instead intended to vindicate the authority of the court." 895 F.2d at 1515. With all respect, we think this is simply wrong. If a bankruptcy court can decide the qualification of attorneys to represent parties before it, which no one denies, and if such decisions are necessary or appropriate in the execution of the court's duties under Title 11, which again no one denies, it is likewise necessary or appropriate for the court to enforce its own orders. True, such enforcement vindicates the authority of the court, but the authority of courts exists not for its own sake, but for the sake of the duties that Congress has entrusted to them. An order of criminal contempt, no less than one of civil contempt, is necessary or appropriate to enforce the order for whose violation it is imposed, and the statute in pursuance of which that order was itself entered.

■ Moreover, it is difficult for us to see a substantial constitutional question here. As we have noted, the bankruptcy judge in this case did nothing beyond the sort of action customarily taken by magistrate judges under 28 U.S.C. § 636, action that has long

since been upheld against Article III challenges. The bankruptcy judge's determination was reviewable de novo, and it was within the sole and absolute authority of the party aggrieved, here the appellant Brown, to secure such review. Brown had it within his power to prevent the bankruptcy judge's order from becoming effective simply by filing timely objections, which he did. By contrast, if the Bankruptcy Court had issued its own free-standing judgment, subject to review only by appeal, the District Court's review, as to questions of fact, would not have been de novo; it would have been subject to the clearly-erroneous standard, quite a substantial difference. It is significant, we think, that the Ninth Circuit itself in *In re Sequoia Auto Brokers, Ltd., Inc.,* upon which Brown relies, held that what the bankruptcy court should have done was to "certify the facts to the district court to review de novo and determine whether to issue the order" of contempt. 827 F.2d at 1291 (footnote omitted). This is exactly what happened here.

■ Such a procedure, as the *Sequoia* court observed, comports with that portion of Bankruptcy Rule 9020, as amended in 1987, that requires that certain contested contempt orders be treated as though they were beyond the bankruptcy judges' jurisdiction, that is, as non-core matters. Essentially, that is what was done here, though the Bankruptcy Court did not refer explicitly to Rule 9020.[5]

5. Bankruptcy Rule 9020, as most recently amended in 1991, reads as follows:

Rule 9020. Contempt Proceedings
(a) Contempt committed in presence of bankruptcy judge
 Contempt committed in the presence of a bankruptcy judge may be determined summarily by a bankruptcy judge. The order of contempt shall recite the facts and shall be signed by the bankruptcy judge and entered of record.
(b) Other contempt
 Contempt committed in a case or proceeding pending before a bankruptcy judge, except when determined as provided in subdivision (a) of this rule, may be determined by the bankruptcy judge only after a hearing on notice. The notice shall be in writing, shall state the essential facts constituting the contempt charged and describe the contempt as criminal or civil and shall state the time and place of

hearing, allowing a reasonable time for the preparation of the defense. The notice may be given on the court's own initiative or on application of the United States attorney or by an attorney appointed by the court for that purpose. If the contempt charged involves disrespect to or criticism of a bankruptcy judge, that judge is disqualified from presiding at the hearing except with the consent of the person charged.
(c) Service and effective date or order; review
 The clerk shall serve forthwith a copy of the order of contempt on the entity named therein. The order shall be effective 10 days after service of the order and shall have the same force and effect as an order of contempt entered by the district court unless, within the 10 day period, the entity named therein serves and files objections prepared in the manner provided in Rule 9033(b). If timely objections are

If core proceedings may be assigned to non-Article III judges without offense to the Constitution, and if those judges may decide motions necessarily arising from the administration of such proceedings, such as motions to disqualify attorneys, it follows that the same judges have at least the power to recommend to the district courts that persons violating orders of disqualification be held in criminal contempt. Such a conclusion attributes to bankruptcy judges no more of "the judicial power of the United States," Article III, § 1, than does giving them jurisdiction over core proceedings in the first place. The reasoning of the Fourth Circuit in *In re Walters, supra,* is persuasive on this point. 868 F.2d at 669–70 (civil contempt). *Walters* holds that bankruptcy courts may enter civil-contempt orders of their own, reviewable only by appeal. See also *Hubbard v. Fleet Mortgage Co.,* 810 F.2d 778, 781 n. 4 (8th Cir.1987), stating, perhaps only in dictum, that there is no jurisdictional problem with proceeding under former Rule 9020, under which criminal contempt committed outside the presence of the judge had to be certified to the district courts for adjudication.[6]

In short, we hold that the Bankruptcy Court's action was authorized by 11 U.S.C. § 105(a), and that no violation of the Constitution occurred.

### III.

Brown makes a number of other arguments, only one of which deserves discussion, in our view. He points out that he moved to dismiss the Chapter 13 proceeding before the order of disqualification or any order finding him in contempt was entered. His client had an absolute right to dismiss her Chapter 7 case, he says, and, therefore,

anything the Bankruptcy Court did after erroneously refusing to grant the dismissal was outside its jurisdiction. Both the order of disqualification and the order of contempt were in excess of jurisdiction, and he therefore cannot be punished. Even if we assume that Brown is right on the merits, that is, that the motion for dismissal should have been granted, and that the Bankruptcy Court erred in converting the Chapter 13 proceeding to a Chapter 7 one, the argument would avail nothing in this appeal from the order of criminal contempt. A court may err without losing jurisdiction. In fact, we often do. An error of law is not the same thing as an excess of jurisdiction. An error of law is correctable by appeal or otherwise, but a court committing a mistake of law does not thereby automatically lose power over the case. In the present case, the Court had jurisdiction under Title 11 over the Chapter 13 proceeding filed by Brown for his client. If the order converting the case to a Chapter 7 one, despite the debtor's motion to dismiss, was an error of law, the remedy was by appeal, and Brown in fact did appeal the order of conversion to the District Court. It is hornbook law that the mere fact that an order is erroneous does not mean that a party may violate it with impunity. A court's order must, in all but the most extreme cases, be obeyed, unless the party against whom the order is directed can obtain a stay. If the order is not obeyed, the party in violation may be held in contempt, even if he or she later succeeds in getting the order overturned on appeal. See, *e.g., United States v. United Mine Workers,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). We therefore need not pursue the question whether it was error for the Bankruptcy Court to convert this case to a Chapter 7 proceeding in

---

filed, the order shall be reviewed as provided in Rule 9033.

(d) *Right to jury trial*
 Nothing in this rule shall be construed to impair the right to jury trial whenever it otherwise exists.

**6.** It is not clear to us that the contempt involved in the present case was committed outside the presence of the judge or court. The contempt was not committed in the physical presence of the judge, to be sure, but it did consist of the filing of a pleading in the judge's court. This may amount to a contempt committed in or near the presence of the court, a so-called "direct contempt," and it may be easier to argue that direct contempts—for example, punching the judge in the nose in open court—are constitutionally punishable by bankruptcy courts themselves, without reference to the district courts. We need not pursue this argument in the present case. Even if the filing of the pleading was only an indirect contempt, the procedure followed here was clearly valid.

the face of the motion to dismiss and the objection to the conversion lodged by the debtor. Even if such error occurred, Brown had no right to take the law into his own hands and disobey the order of disqualification entered by the Bankruptcy Court.

### IV.

We have considered the other arguments urged by the appellant and hold that they are without merit. The judgment of the District Court holding the appellant in criminal contempt is

Affirmed.