**In re Darenda DOWNING, Debtor.**

**Bankruptcy No. 95-1-0386-DK.**

United States Bankruptcy Court, D. Maryland.

May 21, 1996.

Pamela L. Lyles, Washington, DC, pro se.

Thomas L. Lackey, Chapter 13 Trustee, Bowie, MD.

Clifford J. White III, Assistant United States Trustee, Greenbelt, MD.

## MEMORANDUM OF DECISION

DUNCAN W. KEIR, Bankruptcy Judge.

On the 17th day of October, 1996, this court entered in this case an order imposing sanctions against Pamela L. Lyles ("Lyles") for civil contempt of this court for the reasons set forth therein. As recited in that order, this court sanctioned the contemnor by barring her from acting as an attorney in any matter before the United States Bankruptcy Court for the District of Maryland until the contemnor purged herself in accordance with that order. Expressly included in the activities from which the contemnor was barred were "acceptance of any fee in conjunction with any matter which is before this court or subsequently is brought before this court; advising any person in any bankruptcy matter in this district, continued representation of any party in any matter in this district, or the accepting of any new matter, preparation of any new pleading or filing of any new pleading or case in the United States Bankruptcy Court for the District of Maryland." Order Barring Counsel From Practice of Law Before United States Bankruptcy Court for the District of Maryland, entered October 17, 1995 (paper no. 32) (the "Bar Order").

On or about March 8, 1996, this court was informed by letter from the United States District Court for the District of Maryland (which letter was copied to Pamela L. Lyles) that information had been presented in a proceeding before that court which indicated that Lyles was intentionally violating this court's Bar Order. On March 21, 1996, the United States Trustee ("Trustee") filed a motion to hold Lyles in contempt (paper no. 34). On March 26, 1996, this court entered an order to show cause, reciting the allegations set forth in the motion by the Trustee and requiring Lyles to appear before this court on April 29, 1996 at 11:00 a.m. to show cause why she should not be held in criminal contempt of this court for the reasons asserted therein. A recitation of the events leading up to the April 29, 1996 hearing is set forth in this court's Order to Appear and Show Cause for Criminal Contempt entered March 26, 1996 (Paper no. 35). That recitation is adopted as if fully set forth herein.

On April 29, 1996, Ms. Lyles appeared before this court as required by the order to show cause and an evidentiary hearing was held. The court heard the testimony of seven witnesses called by the Trustee and examined sixteen exhibits which were allowed into evidence. The court heard one witness called by Lyles. From the evidence presented at that hearing, it was proven beyond a reasonable doubt that Lyles has willfully and intentionally violated the Bar Order by flagrantly and repeatedly practicing law in matters before this court subsequent to the entry of the Bar Order. Lyles did not dispute or contravene that she had continued to represent persons in cases before this court, and to represent persons in the filing of new bankruptcy cases before this court, all in direct disobedience of the Bar Order.

The uncontradicted testimony of the witnesses, and the uncontradicted facts represented in the exhibits, establish that almost five months after the Bar Order, Lyles filed motions in two separate 1996 bankruptcy cases before this court as "counsel for the debtor." Trustee's Exhibits 1 and 2. In addition, Lyles solicited and entered into retainer agreements in this district to provide legal services to clients in cases before this court. One of those clients, Robin Emerson ("Emerson"), testified that she received flyers advertising Lyles' services as an attorney. On January 4, 1996, Emerson entered into a retainer agreement with Lyles which provides that "Pamela L. Lyles, Esquire, hereby agrees to represent the above-named party in filing a petition under Chapter 13 of the Code." Trustee's Exhibit 5. Emerson further testified that on that same date she paid the sum of $300.00 to Lyles, and later paid another $800.00 for Lyles' services. A receipt for the latter sum was issued by John Edmond ("Edmond"), Lyles' assistant. Trustee's Exhibit 6. The retainer transaction took place at Emerson's home in Oxon Hill, Maryland. Emerson testified that Lyles and Edmond advised her concerning the filing of a Chapter 13 bankruptcy case, and that Emerson signed documents presented to her by Lyles. These documents were later filed by Lyles, commencing Emerson's bankruptcy case.

Similarly, Michael Thomas ("Thomas") testified that he met Lyles at his home on December 30, 1995. This meeting came about after Thomas responded to a flyer advertising Lyles' services which he had received in the mail. Lyles was accompanied by Edmond at the meeting, and they discussed with Thomas the filing of a bankruptcy case. As a result of that discussion, Thomas signed a retainer agreement dated December 30, 1995; that agreement also recites the payment by Thomas and the receipt by Lyles of $500.00 with a further balance due of $635.00 in 30 days. Trustee's Exhibit 14. While Lyles and Edmond waited, Thomas went to a bank and withdrew the $500.00. He signed a bankruptcy petition form in blank at Lyles' request and did not speak with her again, being unable to reach her at her office subsequent to that meeting. Lyles filed the bankruptcy petition after having filled it in, but took no further action to assist Thomas. Although Thomas received information from the Chapter 13 Trustee as a result of the case filing, he did not attend his Section 341 meeting or otherwise contact the Chapter 13 Trustee, having been instructed by Lyles to do nothing until she got back to him. Thomas' bankruptcy case was dismissed after his failure to appear at the § 341 meeting.

A similar occurrence was testified to by Mr. Carlton Edwards ("Edwards"). Edwards received a solicitation from Lyles in an envelope dated March 15, 1996, and addressed to Edwards at his home in Hyattsville, Maryland. Trustee's Exhibit 8. In the envelope was a form letter on letterhead bearing the caption, "Law Offices of Pamela L. Lyles, Esquire," which solicited the recipient to call Lyles any time, day or night, for an appointment. Trustee's Exhibit 9. Also included in the package was a purple colored flyer, Trustee's Exhibit 10 and a business card from Pamela L. Lyles, Esquire, Attorney at Law. Trustee's Exhibit 11.

In response to this solicitation, Edwards contacted Lyles who, along with Edmond, visited Edwards at his home. On March 28, 1996, Edwards signed a retainer agreement retaining Lyles as his counsel to file a peti-

tion under Chapter 13 of the Bankruptcy Code. He gave Lyles three checks, the first in the amount of $160.00 for the filing fee of the Chapter 13 bankruptcy case, and the other two aggregating $975.00 for attorney's fees. Subsequent to speaking with Lyles and signing the retainer agreement and delivering the checks, Edwards called a bar association and "got another attorney." He received back his original check for filing fees from the court. Trustee's Exhibit 13.

Lyles also sent similar solicitations with business cards and flyers to Ms. Tracey Blessing ("Blessing"). Blessing was not a person whose home was being advertised for foreclosure, but was listed in a foreclosure advertisement as substitute trustee. Blessing testified as to the date and identity of the solicitations which she received. Trustee's Exhibits 15, 16 and 17.

At the hearing, Lyles produced one witness, Ms. Sarah Williams ("Williams"), who did not contradict any of the evidence introduced by the Trustee. Rather, Williams testified that she filed a Chapter 13 case in 1992, and as a result managed to save her house. When she again encountered financial problems, she spoke with Edmond and filed a subsequent bankruptcy case. In that case, however she was informed that a hearing scheduled for March of 1996 was postponed and subsequently her case was dismissed. Williams testified that she did not know why her case had been dismissed, but described Lyles as having conducted "fine work."

Finally, Ms. Darenda Downing, the debtor in this case, testified that she had never received a disgorgement of fees to which she was entitled by this court's order of July 10, 1995 (paper no. 25). From this testimony the court finds that Lyles never purged herself of her civil contempt, and the Bar Order therefore remained in place during all of the events described by the various witnesses and documents in evidence.

The uncontradicted evidence demonstrates to a certainty and beyond a reasonable doubt that Lyles (1) accepted fees in conjunction with matters brought before the Bankruptcy Court for the District of Maryland after the entry and service of the Bar Order; (2) advised persons in this district to file bankruptcy and filed bankruptcy cases for persons in this district after the entry and service of the Bar Order; (3) represented such persons in drafting and filing bankruptcy petitions in this district after the entry and service of the Bar Order; and (4) not only accepted new matters, but actively solicited and obtained new clients for cases before the United States Bankruptcy Court for the District of Maryland after the entry and service of the Bar Order. In short, it is found beyond a reasonable doubt that Lyles violated each and every prohibition specifically set forth in the Bar Order.

Lyles did not argue that she had not committed these acts, but rather argued that she should be permitted to practice law. Lyles made the argument, unsupported by any evidence at the hearing, that her problems stemmed from a decision of Chief Judge Mannes in a prior case in which, Lyles maintained she was mistakingly denied the right to enter her appearance. She went on to argue that pursuant to the Sixth Amendment of the United States Constitution, she should not be prohibited from practicing law as it impinged upon the constitutional rights of clients to choose and be represented by counsel of their choice. Lyles further argued that as a result of being barred from practice, she had lost income and was completely impecunious. Finally, Lyles argued that other attorneys within this district, including James Greenan[1] and Gregory Johnson[2], have a punitive animus against her and are attempting to "bring her down." Lyles concluded in her argument that she meant no disrespect to the court. She further asserted that she had attempted "from Baltimore" to obtain a stay of the Bar Order pending ap-

1. Mr. Greenan was appointed by the United States District Court to act as an investigative officer in conjunction with a disbarment pro-

ceeding involving Lyles which is pending before that court.

2. Mr. Johnson is an attorney that practices be-

peal.[3]

Finally, Lyles argued that she believes there is a conspiracy being conducted against her, based at least in part on the fact that she "won" a case against the United States Postal Service in the United States Court of Appeals.[4] No evidence of any conspiratorial activity was introduced at the hearing on this matter and the court finds no basis for such an allegation.

In her closing argument, Lyles argued that the case of *Donovan v. Sovereign Security, Ltd.*, 726 F.2d 55 (2d Cir.1984), prohibited a finding of contempt under her circumstances, where she did not have the financial ability to pay that which she owed. The issue before this court in this matter is whether or not Lyles willfully and intentionally violated this court's Bar Order; it is not an opportunity for Lyles to re-try the hearing on sanctions for her civil contempt. Lyles did not appeal the Bar Order and she cannot defend against her intentional disobedience of a lawful order by now challenging the underlying order and/or its legal validity or factual basis. *Id.* at 60.

■ No more valid is the argument that the Bar Order offends Sixth Amendment rights, and that this perceived offense somehow justified Lyles' intentional disobedience of this court's Bar Order. The right to counsel is held by the client and not by counsel, and this right is not offended or violated by refusal to allow a non-attorney, not admitted to practice before a court, to represent a party. *United States v. Taylor*, 569 F.2d 448, 450–51 (7th Cir.), *cert. denied*, 435 U.S. 952, 98 S.Ct. 1581, 55 L.Ed.2d 803 (1978). Restrictions that permit only qualified persons to practice law and appear before a

court in representation of others do not violate the First or Sixth Amendments. *Pilla v. American Bar Ass'n*, 542 F.2d 56 (8th Cir. 1976); *Hartman v. Commissioner of Internal Revenue*, 65 T.C. 542, 1975 WL 3038 (1975). This is particularly true in civil proceedings (such as the bankruptcy cases in which Lyles improperly appeared), as it has been held that the Sixth Amendment does not give a litigant an absolute right to be represented by a person not admitted to practice before the court. *Ruggere v. Commissioner of Internal Revenue*, 78 T.C. 979, 1982 WL 11106 (1982).

■ No more persuasive is Lyles' naked statement that she intended no disrespect or contempt. This is not a case of an attorney who has been barred from practice and who has innocently attempted to assist clients which she had already retained. After the Bar Order, Lyles intentionally and flagrantly solicited strangers as new clients within this district. In addition, this conduct was clandestine. The court must take judicial notice of its own record. The voluntary petitions filed by Lyles' office on behalf of Robin Emerson, Michael Edge, and Carlton Edwards (all filed after the entry of the Bar Order) do not disclose that they were prepared or filed by Pamela L. Lyles and/or her law office. The petitions all indicate that those debtors were filing pro-se. Thus, it is apparent that although Lyles was still receiving attorney's fees, providing legal advice and filing documents for clients, she was attempting to do so secretly. Whatever her avowed state of mind may have been and may be today, the actions by Lyles amount to willful and intentional contempt of the orders of this court.

*Matter of McElhaney*, No. CCB–95–3008 (D.Md. Nov. 20, 1995).

fore this court.

3. The docket of this case reflects that no appeal has been filed with respect to any of the orders entered in this case. The court takes judicial notice that Lyles did file an appeal of an order by this court entered in the case of *In re Robin McElhaney*, No. 95–1–3008–DK (Bankr.D.Md. 1995), which required her to disgorge counsel fees in that case. In that case, Lyles sought a stay of the Bar Order entered in this case. By order dated November 20, 1996, the District Court denied the requested stay for the reasons set forth in a Memorandum Opinion. *In the*

4. No evidence concerning a case before the United States Court of Appeals involving the United States Postal Service was introduced. On March 19, 1996, the United States Court of Appeals for the Fourth Circuit decided by published opinion the matter of *Pamela Lyles; John Edmond v. Sparks*, 79 F.3d 372 (4th Cir.1996), in which the Court of Appeals remanded that case to the United States District Court for the District of Maryland with instructions to dismiss all of Edmond's and Lyles' surviving *Bivens*-type claims.

■ "There are three essential elements of criminal contempt under 18 U.S.C. § 401(3): (1) there must be a violation (2) of a clear and reasonably specific order of the court, and (3) the violation must have been willful." *United States v. NYNEX Corp.,* 8 F.3d 52, 54 (D.C.Cir.1993); *see also Cooper v. Texaco, Inc.,* 961 F.2d 71, 72 (5th Cir.1992); *United States v. Allen,* 73 F.3d 64, 67 (6th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1587, 134 L.Ed.2d 684 (1996). No argument was raised that the Bar Order was anything other than a clear and reasonably specific order of this court. As set forth hereinabove, the Bar Order prohibited Lyles from practicing law in matters before the Bankruptcy Court and enumerated specific activities which were barred by that prohibition. The evidence, as summarized in this Memorandum of Decision, proves well beyond a reasonable doubt that there were multiple violations of the Bar Order. Finally, notwithstanding Lyles' assertion that she meant no contempt of court, the evidence proves well beyond a reasonable doubt that Lyles intended the acts she committed and thus acted willfully in violating the Bar Order.

■ Finally, Lyles' request that this court reinstate her as eligible to practice law is simply impossible. Lyles' conduct in violation of the Bar Order constitutes further reasons for barring her practice until she demonstrates that she is willing and able to discharge her duties as competent counsel. Moreover, this court is without the power to "reinstate" Lyles. By Order dated April 15, 1996, the United States District Court indefinitely suspended Pamela L. Lyles, Esquire, from the practice of law. *In re Pamela Lyles,* No. 96–19 (Disciplinary) (D.Md. Apr. 15, 1996). No attorney (other than pro-hac vice) may appear as counsel before the United States Bankruptcy Court for the District of Maryland unless such attorney is a member of the Bar of the United States District Court for this District. Local Bankruptcy Rule 4(a)(1). In any case, as already stated in this Memorandum, the matter before the court is not a reconsideration of the Bar Order, but Lyles' criminal contempt of and willful and intentional violation of that order.

Accordingly, an order shall be entered finding Lyles in criminal contempt of this court. Pursuant to Bankruptcy Rule 9020, unless objections are filed to that order within 10 days of service of the order, the order shall have the same force and effect as an order of contempt entered by the United States District Court. If and when this court's order of contempt becomes final pursuant to the passage of the 10 day period without objection, or a decision by the United States District Court overruling any objection timely filed, this matter shall be transmitted to the United States District Court for sentencing. *In re Finney,* 167 B.R. 820 (E.D.Va.1994). For this reason, this court shall require the Clerk of this court to forward this Memorandum of Decision, the Order For Criminal Contempt and Referring Matter for Sentencing, any timely filed objections, any record designated and provided pursuant to Rule 9033 by the contemnor, and specified portions of this case file to the United States District Court for review of any objections (if filed) and sentencing.