# United States Bankruptcy Appellate Panel

## FOR THE EIGHTH CIRCUIT

No. 97-6053

Richard A. Koehler,           *
                                     *

       Appellant,            *

                                * Appeal from the United

    v.                            * States Bankruptcy Court

                            * for the Western District

                                * of Missouri.

William E. Grant,           *
                                     *

       Appellee.             *

Submitted: September 30, 1997

Filed: October 31, 1997

Before KRESSEL, SCHERMER and SCOTT, Bankruptcy Judges.

KRESSEL, Bankruptcy Judge.

Richard A. Koehler appeals from the bankruptcy court's[1] order finding him in contempt and imposing sanctions in the amount of $15,082.01. We affirm.

---

[1]The Honorable Karen M. See, United States Bankruptcy Judge for the Western District of Missouri.

**BACKGROUND**

William E. Grant and Richard A. Koehler first met in connection with Grant's attempt to obtain refinancing on a commercial property located in Butler, Missouri.  In February of 1992, Grant contacted the First Bank of Butler to refinance a loan on his restaurant.  Richard Koehler was employed by First Bank as a loan officer.[2]  Koehler assisted Grant in the refinancing, and eventually helped him to secure a favorable rate.

When Grant became unable to operate the restaurant in June of 1992, Koehler assisted Grant in finding a purchaser and negotiating a purchase contract.  When the contract fell through and Grant was threatened with foreclosure, Koehler advised Grant to file bankruptcy.  With Koehler's assistance, Grant filed his Chapter 11 petition on December 24, 1992.

At the meeting of creditors, the United States Trustee told Koehler to file an application with the court to approve his employment.  Despite a follow-up request, Koehler never applied for court approval to represent the debtor.  On March 16, 1993,

---

[2]During the time that Grant was refinancing his loan, First Bank of Butler was purchased by Bates County National Bank. Subsequently, Koehler became an employee of Bates County National Bank.

the United States Trustee filed a motion for disqualification, alleging that Koehler's employment by Bates County National Bank rendered him an interested party.[3]  On April 9, 1993, the bankruptcy court sustained the objections and entered an order disqualifying Koehler.  The court expressly determined that Koehler's dual representation of the debtor and Bates County National Bank, a major secured creditor, created an actual conflict of interest.  Accordingly, the court ordered Grant to obtain new counsel.  The court also required Koehler to file and serve on the United States trustee and all creditors an accounting of any fees collected in conjunction with the bankruptcy case.  Neither the debtor nor Koehler appealed the order.

Upon Koehler's recommendation, Grant subsequently sought approval to hire Charles C. Curry as his bankruptcy attorney and approval was granted.  On August 25, 1993, the debtor's amended plan was confirmed. In the ensuing months, Grant continued to comply with the terms of his plan and made his final payment in October of 1994.  On March 16, 1995, Grant's case was closed.

---

[3]11 U.S.C. § 327(a) provides: "Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons. . . ."  Pursuant to § 1107(a), debtors in possession and their attorneys are subject to the same requirement.

After the entry of the disqualification order, Koehler continued to represent Grant for approximately two years. Koehler continued to negotiate with Grant's insurance carrier in connection with a fire claim and he regularly consulted with Curry regarding Grant's bankruptcy case. In fact, Koehler frequently prepared documents and pleadings and then sent them to Curry to sign and file. Despite their long-standing alliance, the parties never entered into a written fee agreement, nor did Grant pay for Koehler's services.

In March of 1994, the parties allegedly reached a verbal fee arrangement under which Grant agreed to compensate Koehler $6,400.00 for work performed in connection with the bankruptcy case. Pursuant to the arrangement, Grant paid Koehler $3,600.00 on December 1, 1994. When Grant failed to pay the balance by March of 1995, Koehler submitted a statement to Grant itemizing his services and demanding payment. Grant proferred two additional payments, which Koehler refused. On April 26, 1995, Koehler initiated collection proceedings against Grant in the Associate Division of the Bates County Circuit Court.

On May 10, 1995, Grant filed a motion in the bankruptcy court seeking sanctions for Koehler's violation of the court's disqualification order. The court held hearings on May 25 and

June 22, 1995.  At the time of the first hearing, the court reopened

Grant's bankruptcy case.[4]  The court subsequently entered an order

finding Koehler in contempt and imposing sanctions in the amount of

$15,802.01.  Koehler appeals.


**DISCUSSION**

In his appeal, Koehler raises three principle arguments.  First,

he suggests that the bankruptcy court lacked subject matter jurisdiction

to enter its contempt order since the debtor's bankruptcy case was

closed prior to the contempt hearing.  Second, Koehler argues that the

court erred in issuing the contempt order since the disqualification

order on which it was based was ambiguous.  Finally, Koehler contends

that the decision of the bankruptcy court should be reversed because of

alleged gender bias by the judge.


<u>Jurisdiction</u>

Koehler argues that the bankruptcy court lacked subject matter

jurisdiction to enter the contempt order since the

---

[4] 11 U.S.C. § 350 (b) provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."

debtor's bankruptcy case was closed before the contempt hearing.[5]

Jurisdiction is primarily a creature of statute.  Bankruptcy courts derive their jurisdiction from 28 U.S.C. § 1334.  This statute confers jurisdiction on bankruptcy courts to hear proceedings "arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).[6]

The court's jurisdiction does not end once a plan is confirmed or the case is closed.  In fact, it is well-established that courts retain jurisdiction to enforce their own orders.  <u>Ex</u>

---

[5]On a related note, Koehler argues that the bankruptcy court lacked jurisdiction because the debtor did not affirmatively allege a basis for jurisdiction in his motion.  Jurisdiction exists independent of the parties' pleadings.  Parties cannot, through mutual agreement, confer jurisdiction which is otherwise lacking, nor can a court be deprived of jurisdiction simply because a litigant fails to plead it.  Furthermore, a party's failure to plead jurisdiction does not relieve a court of its obligation to determine its jurisdiction *sua sponte*.  For his part, Grant argues that the court possessed jurisdiction because the plan contained a provision which authorized the court to exercise jurisdiction. The debtor's argument is similarly off-track.  A court cannot invest itself with jurisdiction beyond that jurisdiction which is provided for under law.  <u>See</u> <u>Harstad v. First Am. Bank</u>, 39 F.3d 898, 902 n.7 (8th Cir. 1994) (holding that plan provision "cannot and does not *confer* jurisdiction upon the court, as only Congress may do that."); <u>Walnut Assocs. v. Saidel</u>, 164 B.R. 487, 495 (E.D. Pa. 1994) (holding that court cannot retain jurisdiction simply "by inserting a provision in the plan or order of confirmation. . . .").

[6] 11 U.S.C. § 1334 actually confers jurisdiction on the district courts.  Jurisdiction is passed on to the bankruptcy courts under 28 U.S.C. § 157.

6

parte Robinson, 86 U.S. 505, 510 (1873) ("The power to punish for contempt is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts. . . ."); Brown v. Ramsay (In re Ragar), 3 F.3d 1174, 1179 (8th Cir. 1993) ("If a bankruptcy court can decide the qualification of attorneys to represent parties before it . . . and if such decisions are necessary or appropriate in the execution of the court's duties under Title 11 . . . it is likewise necessary or appropriate for the court to enforce its own orders."); Shillitani v. United States, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt.").

The bankruptcy court's contempt power issues specifically from 11 U.S.C. § 105(a).[7]  Section 105(a) provides, in part:

---

[7]Rule 9020 of the Federal Rules of Bankruptcy Procedure implements the bankruptcy court's contempt power.  See Mayex II v. Du-An Prod., Inc. (In re Mayex II Corp.), 178 B.R. 464, 469 (Bankr. W.D. Mo. 1995) (holding that court's authority to enter civil contempt orders is "expressly provided for" in Rule 9020). Rule 9020 entitles a party to de novo review in the district court:

> The order shall be effective 10 days after service of the order and shall have the same force and effect as an order of contempt entered by the district court unless, within the 10 day period, the entity named therein serves and files objections prepared in the manner provided in Rule 9033(b).

In this case, Koehler did not avail himself of de novo review by the district court, but instead allowed the order to become final.  Therefore, the contempt order is subject to ordinary

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

11 U.S.C. § 105(a); Brown v. Ramsay (In re Ragar), 3 F.3d at 1179; Mountain Am. Credit Union v. Skinner (In re Skinner), 917 F.2d 444, 447 (10th Cir. 1990) ("[S]ection 105(a) empowers bankruptcy courts to enter civil contempt orders."); Burd v. Walters (In re Walters), 868 F.2d 665, 669 (4th Cir. 1989) (holding that 11 U.S.C. § 105 authorized court to enter contempt order against attorney who failed to comply with court order requiring him to remit attorney's fees). We therefore conclude that the bankruptcy court had jurisdiction.

### Contempt

Koehler also argues that the bankruptcy court erred because the disqualification order which formed the basis for its contempt finding was ambiguous. A court cannot issue a contempt order unless a party has violated a specific order of which he or

---

appellate review.

8

she is aware. See United States v. Di Mauro, 441 F.2d 428, 439 (8th Cir. 1971) ("[I]n order to cite a person for contempt, it must be shown that the alleged contemnor had knowledge of the order which he is said to have violated and that order must be specific and definite."); United States v. Cutler, 58 F.3d 825, 834 (2d Cir. 1995) ("A defendant cannot be held in contempt absent a 'definite and specific' order of which he had notice."). In a proceeding for civil contempt, the movant must establish both elements by clear and convincing evidence.[8] Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc., 950 F.2d 1525, 1529 (11th Cir. 1992). Once the plaintiff has made this prima facie showing, the burden shifts to the defendant to show that he or she was unable to comply with the court's order. Id. We review the bankruptcy court's issuance of the contempt order under an abuse of discretion standard. Wright v. Nichols, 80 F.3d 1248, 1250 (8th Cir. 1996).

In this case, it is undisputed that Koehler was on notice of the disqualification order since he was the party to whom the order was directed and attended the hearing in his own defense.

---

[8]Willfulness is not an element of a *civil* contempt claim. Rolex Watch U.S.A., Inc. v. Crowley, 74 F.3d 716, 720 (6th Cir. 1996). Therefore, Koehler's intent in violating the disqualification order is irrelevant.

Additionally, the disqualification order was both direct and specific. The order identified the conflict and prohibited Koehler from representing the debtor.

## Bias

Koehler also alleges a host of vague and ill-supported accusations of gender bias as the basis for reversal. We find no support in the record or any basis for these contentions.

## Defenses

On appeal, Koehler offers several defenses for his failure to comply with the disqualification order. First, Koehler contends that his continued efforts on Grant's behalf, particularly his consultations with Curry, were excusable, since he was already familiar with the bankruptcy file and therefore best situated to provide assistance. While Koehler's desire to share his professional insight with his replacement might in some situations be considered laudable, it was impermissible in bankruptcy. Once disqualified, Koehler was categorically precluded from acting on Grant's behalf.

In addition, Koehler argues that he was encouraged, through the continued solicitations of the debtor, to disregard the

disqualification order.[9]  Koehler is again off the mark, since the debtor's imprecations and understanding are irrelevant.  As the party to whom the disqualification order was directed, Koehler was obligated to discontinue his representation of the debtor and simply should have refused to provide assistance.

## Damages

It is appropriate for a court to impose monetary sanctions in connection with an order for contempt.  In this case, the bankruptcy court imposed sanctions against Koehler in the amount of $15,082.01.  In reaching this figure, the court took into account the attorney's fees incurred by Grant in bringing the contempt motion, fees advanced by Grant to Koehler, and Grant's physical injuries and travel expenses.[10] We cannot say that the bankruptcy court abused its discretion in arriving at an amount

---

[9]At the contempt hearing, Grant testified that he assumed the order only prevented Koehler from collecting fees until the plan was consummated.  We find it unremarkable that the debtor, a non-lawyer, should fail to appreciate the parameters of the disqualification order.  At any rate, Koehler's suggestion that he was somehow obligated to entertain Grant's understanding of the order is unavailing.

[10]The judgment breaks down as follows: $6,527.51 in attorney's fees, $5,000 for "stress, anxiety, and related physical illness," $2,602 for payments by Grant to Koehler, and $952.50 for Grant's travel expenses.

11

based upon these considerations.  However, the parties agree that the court inflated the judgment by counting a portion of Grant's attorney's fees twice.[11]  Therefore, the original judgment must be reduced by $1,750 to reflect this error.

#### CONCLUSION

For the foregoing reasons, we conclude that the bankruptcy court did not abuse its discretion in issuing an order finding Koehler in contempt and imposing sanctions.  Accordingly, we affirm.  However, this case is remanded to the bankruptcy court  with directions to enter an amended judgment against Koehler in the amount of $13,332.01.


A true copy.


Attest:


CLERK, U.S. BANKRUPTCY APPELLATE PANEL FOR THE EIGHTH CIRCUIT.

---

[11]The court's original contempt order imposed sanctions against Koehler in the amount of $11,534.50, including $1,750 in fees and expenses for Grant's attorney, Erlene Krigel.  At the conclusion of the contempt hearing, the court asked Krigel to submit an affidavit itemizing her fees and expenses for the period following the May 25, 1993 hearing. However, Krigel submitted an itemization of her *total* fees and expenditures in the amount of $3,547.51.  When the court entered its final order, it relied on this figure, thereby duplicating Krigel's attorney's fees by $1,750.