**In re Mildred A. WEBB, Debtor.**

**No. 4:03–bk–15082–E.**

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

Feb. 25, 2004.

Mildred A. Webb, pro se.

Kimberly D. Burnette, attorney for Bank of America Mortgage.

Charles Tucker, Little Rock, AR, Assistant U.S. Trustee.

David Coop, N. Little Rock, AR, Standing Chapter 13 Trustee.

Joyce Bradley Babin, Little Rock, AR, Standing Chapter 13 Trustee.

Omar Greene, II, Office of the Federal Public Defender, Little Rock, AR for the Eastern and Western Districts of Little Rock.

## ORDER OF CRIMINAL CONTEMPT

AUDREY R. EVANS, Chief Judge.

Came for hearing on February 19, 2004, the Notice and Order to Show Cause Why Debtor Mildred A. Webb Should Not Be Held in Criminal Contempt ("**Show Cause Order**").

The procedural history of this matter is as follows: on June 3, 2003, the Court heard a "Motion to Dismiss with a Bar to Refiling" filed by the United States Trustee ("**U.S. Trustee**").[1] Mildred A. Webb ("**Debtor**") did not attend the June 3, 2003 hearing. In this Motion, the U.S. Trustee, through the Assistant U.S. Trustee, Charles Tucker, also requested that Debtor be held in contempt of a previous order of this Court, as further described below. On July 7, 2003, the Court entered the Show Cause Order. This Show Cause Order served as notice of the essential facts constituting criminal contempt alleged

1. The Court also heard a "Motion for Retroactive Annulment of the Automatic Stay and for Ratification of Foreclosure Sale" and an "Objection to Confirmation of Plan" filed by Bank of America Mortgage. The Motion for Retroactive Annulment of the Automatic Stay was granted by a previous order. As announced in open court, the U.S. Trustee's Motion to Dismiss will be granted in a separate order which will also dispose of the Objection to Confirmation.

against Debtor for the filing of her tenth (10th) bankruptcy petition in apparent violation of the Court's previous order prohibiting further bankruptcy filings by Debtor. In this Show Cause Order, the Court requested that the U.S. Attorney for the Eastern District of Arkansas prosecute this matter. A subsequent Order entered on October 9, 2003, established a hearing date of December 9, 2003, for the criminal contempt proceeding.

On December 9, 2003, Debtor appeared before this Court *pro se* and requested the assistance of counsel. Accordingly, a preliminary hearing was scheduled on December 17, 2003, to determine Debtor's eligibility for representation by an Assistant Federal Public Defender. However, on December 16, 2003, Debtor submitted an affidavit demonstrating that she had insufficient funds to hire an attorney, and on that same day, U.S. Magistrate Judge J. Thomas Ray appointed Omar Greene, II, of the Federal Public Defender's Office to represent Debtor. Therefore, it was not necessary to hold the December 17, 2003 hearing. The criminal contempt hearing was subsequently scheduled for and, in fact, held on February 19, 2004.[2] William Adair, Senior Assistant U.S. Attorney, prosecuted this case, and Mr. Greene represented Debtor, who was present.

### LAW

This Court treats this Order of Contempt as proposed findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy 9033. Therefore, this Order of Contempt shall become effective as a final order ten days after its service on Debtor, unless, within the ten-day period, Debtor serves and files an objection with the Bankruptcy Clerk. *See* Federal Rule of Bankruptcy Procedure 9033(b). If an objection is filed, this Order of Contempt shall be subject to *de novo* review by the District Court under Federal Rule of Bankruptcy Procedure 9033(d). This is in accord with the procedure for criminal contempt in bankruptcy cases as described in *Brown v. Ramsey (In re Ragar)*, 140 B.R. 889 (Bankr.E.D.Ark.1992), *aff'd*, 3 F.3d 1174 (8th Cir.1993).[3]

The Court has the power to enforce its own orders through criminal contempt proceedings. *See Ragar*, 3 F.3d at 1177–79; 11 U.S.C. § 105(a); 18 U.S.C. § 401(3). *See also In re Swaffar*, 253 B.R. 441 (Bankr.E.D.Ark.2000). Criminal contempt proceedings are appropriate to punish the alleged contemnor and to vindicate the Court's authority. *See United States v. United Mine Workers*, 330 U.S. 258, 302–03, 67 S.Ct. 677, 91 L.Ed. 884 (1947) (citation omitted). In a contempt hearing, a debtor is entitled to the presumption of innocence, proof beyond a reasonable doubt, and "all the protections afforded those accused of a crime." *American Chem. Works Co. v. International Nickel,*

---

**2.** The date originally set for this hearing was February 5, 2004. However, based on a request by Mr. Adair, and with the consent of Mr. Greene, the hearing was moved to February 19, 2004. *See* Order Changing Show Cause Hearing Date, entered January 15, 2004.

**3.** The Court is aware that Federal Rule of Bankruptcy Procedure 9020, as cited in this Eighth Circuit case, has since been substantially modified, and the provision of that rule establishing the procedure for entry and re-

view of contempt orders was deleted. Nevertheless, the Court finds the procedure as outlined in *Ragar* is still sound, since this Court's contempt determination is reviewable *de novo* by the District Court, and it is "within the sole and absolute authority of the party aggrieved," in this case, Debtor, to secure such review by filing an objection, if she wishes. *Ragar*, 3 F.3d at 1179. In sum, "[Debtor] has it within [her] power to prevent [this Order of Contempt] from becoming effective simply by filing timely objections ...." *Id.*

*Inc. (In re American Chem. Works Co.),* 235 B.R. 216, 221 (Bankr.D.R.I.1999) (citation omitted). Therefore, the United States had the burden to prove beyond a reasonable doubt that (1) there was a violation by Debtor, (2) of a clear and reasonably specific Order of this court, and (3) the violation was willful. *In re Downing,* 195 B.R. 870, 875 (Bankr.D.Md.1996) (citations omitted); 18 U.S.C. § 401(3). *See also Wright v. Nichols,* 80 F.3d 1248, 1251 (8th Cir.1996). "Willful" in the context of criminal contempt means "a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of any order, and the necessary intent may be inferred from the evidence." *Wright,* 80 F.3d at 1251 (citation and internal quotes omitted).

### FACTS AND DISCUSSION

The Court heard testimony from the following individuals: Debtor's sister Carole Tabron, Kimberly Burnette (attorney for Bank of America Mortgage), Linda Green (Operations Supervisor in the Bankruptcy Court for the Eastern and Western Districts of Arkansas), and Charles Tucker (Assistant U.S. Trustee). Having heard such testimonial evidence and received documentary evidence on the issue of Debtor's alleged criminal contempt, and having heard arguments by counsel for Debtor and the United States, it appearing that Debtor received sufficient notice of the aforesaid hearing, after due deliberation by this Court it is, beyond a reasonable doubt, **FOUND:**

1. Debtor is literate and graduated with honors from the University of Arkansas at Pine Bluff with a degree in English.

2. Debtor filed ten (10) bankruptcy petitions since 1998, nine (9) of which were dismissed due to failure to make payments, failure to file schedules or failure to pay the filing fee. The tenth (10th) petition is the petition now pending before this Court. The following is a chronology of the bankruptcy filings by Debtor, all of which were under Chapter 13 of the Bankruptcy Code:

| Case Number | Date Filed | Disposition |
| --- | --- | --- |
| 1. 98–41351 | 03/17/98 | Dismissed 07/16/99 for failure to make payments into plan |
| 2. 99–45708 | 12/17/99 | Dismissed 04/30/00 for failure to make payments into plan |
| 3. 00–43171 | 07/24/00 | Dismissed 08/30/00 for failure to file schedules and plan |
| 4. 00–45712 | 12/12/00 | Dismissed 01/4/01 for failure to file schedules |
| 5. 01–42256 | 04/17/01 | Dismissed 05/22/01 for failure to pay filing fee |
| 6. 01–44832 | 08/28/01 | Dismissed 10/11/01 for failure to pay filing fee |
| 7. 02–11295 | 02/05/02 | Dismissed 03/20/02 for failure to pay filing fee |
| 8. 02–17778 | 07/16/02 | Dismissed 08/27/02 for failure to pay filing fee |
| 9. 02–23337 | 11/19/02 | Dismissed 01/30/03 for cause and with prejudice |

3. On January 30, 2003, the Court entered a lawful order dismissing Debtor's ninth (9th) petition and barring Debtor from filing another case under the Bankruptcy Code for a period of two (2) years from this Order's date of entry ("**January 30, 2003 Dismissal Order**"). In the January 30, 2003 Dismissal Order, this Court also found that Debtor's repeated filings demonstrated an abuse of the bankruptcy process, as well as an inability and a lack of intent to reorganize. Paragraph 11 of the January 30, 2003 Dismissal Order contained the bar to refiling, and that bar was printed in bold face type.

4. Debtor was sent a copy of the January 30, 2003 Dismissal Order by first class mail on February 1, 2003, to the address she provided on her 9th petition, 1608 W. 19th Street Little Rock, AR 72202 ("**Little Rock Residence**"). Debtor also listed

that same address on the instant petition. No document sent to this address by the Court during the course of Debtor's 9th bankruptcy case was ever returned as undeliverable.

5. Debtor was notified by mail by Bank of America Mortgage's agent that a foreclosure sale on her residence was to take place on April 29, 2003. The address that Bank of America Mortgage used to notify Debtor of the foreclosure sale was the same as that listed on the instant bankruptcy petition and the 9th petition. Despite the bar to refiling another petition under the Bankruptcy Code, Debtor filed the instant bankruptcy petition on April 29, 2003, the day her residence was to be sold as part of a statutory foreclosure. In an attempt to stop that foreclosure sale, Debtor went to the sale and presented her bankruptcy petition to the auctioneer.

6. The January 30, 2003 Dismissal Order was clear and reasonably specific, and Debtor's filing of the instant case was a violation of the January 30, 2003 Dismissal Order. Debtor, through Counsel, admitted that the January 30, 2003 Dismissal Order was clear and reasonably specific and that the filing of this case constituted a violation of that January 30, 2003 Dismissal Order.

7. Debtor, through Counsel, did contest whether the violation of the January 30, 2003 Dismissal Order was willful. Mr. Greene argued that the United States failed to prove beyond a reasonable doubt that Debtor was aware of the January 30, 2003 Dismissal Order containing the prohibition on further bankruptcy filings, and he advanced testimony from Ms. Tabron to support his argument. Ms. Tabron testified, in sum, that because Debtor was not

regularly residing at the Little Rock Residence during the first part of 2003, she would pick up "special mail" for Debtor at the Little Rock Residence. "Special mail," according to Ms. Tabron, meant important documents, including documents from Debtor's bankruptcy cases. Ms. Tabron stated that she did not recall seeing any documents from Debtor's bankruptcy cases, but also that Debtor, when she was in Little Rock, would check the mail at the Little Rock Residence. In addition, when Ms. Tabron went to pick up mail, she stated that she would find mail strewn about on the porch, as well as persons unknown to her sitting on the porch of the Little Rock Residence drinking alcoholic beverages. Ms. Tabron also testified to Ms. Webb's fragile mental state, which developed in part as a result of stress due to illness in their family.[4] Any doubt that Ms. Tabron's testimony may raise as to whether Debtor did receive and was aware of the January 30, 2003 Dismissal Order is not reasonable in light of the evidence before the Court. This evidence includes: (1) the very filing of the instant case, which, in and of itself, indicates that Debtor was aware that her 9th case was dismissed and therefore must have received the January 30, 2003 Dismissal Order stating the prohibition on further bankruptcy filings; (2) no testimony by Ms. Tabron that Debtor had ever, in fact, failed to receive any important mail; (3) Debtor's listing of her Little Rock Residence as the address in this case and in her 9th bankruptcy case and the fact that no documents sent by the Court to this address during Debtor's 9th bankruptcy case, including the January 30, 2003 Dismissal Order, were returned as undeliverable; and (4)

4. Although Ms. Tabron also testified that Debtor had been diagnosed with bipolar disorder, Ms. Tabron lacked the necessary expertise to render such a diagnosis, and no other

testimony on this point was entered into evidence. Accordingly, the Court determines there is insufficient evidence to find that Debtor was previously or is currently bipolar.

Bank of America's agent's use of Debtor's Little Rock Residence as the mailing address for its notice of foreclosure sale and Debtor's actual knowledge of the foreclosure sale on her residence based on that notification, as demonstrated by her appearance at that sale. Therefore, based on the foregoing evidence, the Court finds that Debtor did receive her mail and did have knowledge of the January 30, 2003 Dismissal Order stating the prohibition on further bankruptcy filings and that her violation of the January 30, 2003 Dismissal Order was willful.

Accordingly, as announced in open Court before the parties, it is hereby

**ORDERED, ADJUDGED, AND DECREED** that Debtor, Mildred A. Webb, is in criminal contempt of this Court. It is also

**ORDERED** that Debtor is to pay a five hundred dollar ($500.00) fine, such fine to be paid in full or in installments to the Clerk, U.S. Bankruptcy Court for the Eastern and Western Districts of Arkansas within one (1) year from the date this Order becomes final. It is also

**ORDERED** that this Order is subject to the provisions of Federal Rule of Bankruptcy Procedure 9033, and therefore, this Order shall become effective as a final order ten days after its service on Debtor, unless, within the ten-day period, Debtor serves and files an objection with the Bankruptcy Clerk.

**IT IS SO ORDERED.**