**In re SWAFFAR, Debtors.**

**Committee of Unsecured Creditors, Movant,**

v.

**Joe Thomas Swaffar and Sandra Carol Swaffar, Objectors.**

**No. 4:98CV00202 GH.**

United States Bankruptcy Court, E.D. Arkansas, Western Division.

Sept. 29, 2000.

Judy Simmons Henry, Wright, Lindsey & Jennings, Little Rock, AR, for Movant.

Basil V. Hicks, Jr., Hankins, Hicks, Madden & Blagg, North Little Rock, AR, for Objectors.

## MEMORANDUM OPINION AND ORDER

HOWARD, District Judge.

Joe Thomas Swaffar and Sandra Carol Swaffar (Debtors) appeal the February 18, 1998, order of the Bankruptcy Court containing recommended findings holding Debtors in criminal contempt for violating the Bankruptcy Court's orders of May 23 and June 24, 1996. The Bankruptcy Court further recommended a $10,000.00 fine against each Debtor aggregating a total fine of $20,000.00 and, in addition, a term of incarceration of thirty days for each Debtor. The Court adopts the recommended findings, in part, holding the Debtors in criminal contempt, but, due to exceptional circumstances existing in this proceeding, this Court, *sua sponte*, in the public's interest and, in order to avoid unfairness to Debtors, as well as protecting the integrity of the judicial proceedings, reduces the $10,000.00 fine against Sandra Carol Swaffar to $1,500.00 and the $10,000.00 fine against Joe Thomas Swaffar to $3,500.00, and vacates the term of incarceration of thirty days for each Debtor for the reasons hereinafter discussed.

## FACTS AND PROCEDURAL HISTORY

### I.

Debtors voluntarily filed a Chapter 11 bankruptcy petition on March 1, 1995, and their plan of reorganization was due June 29, 1995. On April 4, 1996, Debtors filed their disclosure statement and plan of reorganization.[1]

On May 23, 1996, the Committee of Unsecured Creditors (Committee) filed a verified complaint alleging that Debtors were receiving income and paying personal expenses from the Swaffar and Associates Bank Account, the estate's bank account, and that Debtors were conducting and using the estate account in a manner to avoid the bankruptcy rules. The Committee fur-

---

1. Joe Thomas Swaffar is a private consultant architect. Swaffar's professional activities are administered under a corporate entity known as Swaffar and Associates. Swaffar is the sole owner and shareholder of the corporation.

ther alleged that Debtors had not disclosed this activity to either the creditors or the Bankruptcy Court. The Committee requested a temporary restraining order (TRO) and a permanent injunction against the Debtors in an effort to prevent the alleged wrongdoing. The Bankruptcy Court granted the TRO, without prior notice to Debtors, enjoining the Debtors from "making any further transfer of their assets, or of assets over which they have direction or control, including but not limited to any bank accounts on which they have signatory authority or in which the name of any defendant appears in the style of the account, pending further ruling ... on the Committee's request for a preliminary injunction." The Debtors, however, were permitted to make use of funds in a bank account with Metropolitan Bank for reasonable living expenses "based upon a monthly budget to be approved by the Committee and the United States Trustee and which expenses shall be accurately detailed and described in the Debtors' sworn monthly operating report."

On June 24, 1996, the Debtors consented to the entry of an order that provides, in relevant part, the following:

1. The temporary restraining order entered on May 23, 1996, incorporated herein as Exhibit "I", shall be come a preliminary injunction upon the entry of this order, *nunc pro tunc* to June 3, 1996.

2. The debtors shall file and provide the Committee and U.S. Trustee with accurate monthly operating reports reflecting actual, accurate and itemized cash receipts and disbursements for the debtors individually, Swaffar and Associates, Inc., and the Bentonville Super 8 Motel. Separate operating reports shall be prepared for each entity and each operating report will identify in detail the sources of revenue for the respective entities.

. . . .

4. The debtors will fully complete and file new, accurate schedules and a statement of affairs as required by Bankruptcy Rule 1007, in the form provided by the Official Bankruptcy Forms prescribed by the Judicial Conference of the United States. The new schedules and statement of affairs to be completed and filed by the debtors shall, among other things, accurately describe all of their current assets and liabilities.

5. The debtors shall destroy all of their credit cards and terminate all of their credit card accounts.

6. The debtors shall provide the United States Trustee and the Committee with an inventory of their two safety deposit boxes located at the Bank of Malvern and Pulaski Bank & Trust Company.

7. The debtors will immediately produce and make available to counsel for the Committee all of the items of property (specifically including jewelry and furs) and books and records subpoenaed prior to this hearing.

8. The debtors will retain the right to incur and pay for ordinary and reasonable living expenses only from the debtor-possession bank account located at Metropolitan Bank limited by a monthly budget to be approved by the Committee and United States Trustee.

On August 8, 1996, pursuant to a Committee's motion for appointment of a Chapter 11 Trustee, the Bankruptcy Court entered an order directing the United States Trustee to immediately appoint a trustee in this proceeding which resulted in the designation of Richard Cox (Trustee) as Trustee for the estate. The Bankruptcy Court's order further enjoined the Debtors "from taking any non-business trips, vacations, or supplying funding for any travel or trips for themselves or their immediate family."

On March 10, 1997, the Trustee filed a motion requesting the Bankruptcy Court to convert Debtors' Chapter 11 action to a Chapter 7 proceeding which was granted on May 6, 1997, by the Bankruptcy Court after being advised that all parties agreed

to the conversion. After converting the proceedings to a Chapter 7 action, the bankruptcy judge advised the Debtors as follows:

Mr. and Ms. Swaffar, as of this moment, you-all are converted to a Chapter 7. That means that all of your assets—everything that you own, corporations that you own, everything that you have any kind of interest in, regardless of the business entity that you have—becomes the property of the Chapter 7 Trustee. And that includes exempt property. That includes cash in your house. It includes all cash in all bank accounts. It includes all accounts receivable, any money due either one of you; every piece of property, tangible, intangible; life insurance, vehicles, vehicles in somebody else's name. Everything belongs to Mr. Cox, technically.

. . . .

I want you to go to the respective banks at the start of the business day tomorrow and stop payment on any checks that might be outstanding. Because that money belongs to the Trustee, and it'll be up to the Trustee to distribute it according to the Bankruptcy Code.

. . . .

Mr. Hicks, attorney of Debtors, posed the following question to the bankruptcy judge:

Q. Your Honor, your Order wouldn't apply to anything that they earned after 3:00 o'clock today?

Judge Mixon: It does not.

Debtors filed operating reports for March, 1995 through May, 1996 on August 9, 1996. On April 29, 1997, the Committee moved for sanctions against Debtors for failing, allegedly, to comply with the Bankruptcy Court's order of June 24, 1996. A hearing was held on May 6, 1997. During the hearing, the bankruptcy judge advised the participants that while neither the creditors nor the Trustee had asked the Bankruptcy Court to find Debtors in contempt for disobeying the court's orders of

May 23 and June 24, 1996, but merely asked that sanctions be imposed, he was of the view, based on the record, that a contempt proceeding was warranted. Consequently, on May 16, 1997, a show cause order was issued, *sua sponte*, by the bankruptcy judge directing the Debtors to show why they should not be held in "civil and/or criminal contempt" for failing to comply with the terms of the court's orders.

Debtors filed operating reports on August 7, 1997, for the period from September 1996, to May, 1997. A show cause hearing was held on August 20, 1997.

On February 18, 1998, the Bankruptcy Court entered an order setting forth, among other things, the following findings as a basis for concluding that Debtors were in criminal contempt for disobeying the Bankruptcy Court's orders:

A detailed discussion of the facts is unnecessary to demonstrate why the Debtors are in contempt of this Court's order of May 23 and June 24, 1996. The Debtors, while reposed in chapter 11, have gorged themselves on estate assets without making any discernible effort to reorganize. After their extravagant lifestyle was exposed through the investigation of the Committee, the Debtors consented to the entry of an order intended to remedy the abuses then occurring. However, the Debtors paid no heed to the terms of the order and offered little if any explanation or justification for their conduct.

Contrary to the terms of the June 24, 1996 order, the Debtors failed to file "accurate monthly operating reports reflecting actual, accurate and itemized cash receipts and disbursements for the debtors individually, Swaffar and Associates, Inc., and the Bentonville Super 8 Motel." The evidence of account activity reflected that the Debtors deposited and withdrew substantial amounts of cash from unexplained or suspect sources labeled as simply as "loans." Although the Debtors' reports evidence

personal expenditures during the chapter 11 case well in excess of $100,000.000, the Debtors have not filed tax return during their stay in chapter 11 and have paid no taxes.

The Order filed August 8, 1996, prohibited the Debtors from taking non-business related trips. Notwithstanding the Order, the Debtors and their family made separate trips to St. Louis, Missouri, and Dallas, Texas.

On March 13, 1998, Debtors filed, among others, the following objections to the findings of the Bankruptcy Court:

4. The court's finding with respect to the Debtors filing operating reports on August 9, 1996 for March 1995 through May 1996 is in error. The reports filed on this date were amended operating reports and pursuant to court order and unsecured creditor committee request, these amended reports contained detail of expenses which had been paid from Swaffar and Associates account in an attempt to comply with the court's order.

. . . .

6. The court's findings with respect to operating report information due from Swaffar and Associates, Inc. and Bentonville Super 8 Motel are in error. The Debtors did not have control of all of the records necessary to make these reports, were not in control of Bentonville Super 8 Motel for a portion of the time involved, (in fact, the court appointed Chapter 11 Trustee was in charge for a portion of the time). The Debtors did, in fact, furnish information to the Chapter 11 Trustee and the creditors committee on Swaffar and Associates for the months of June 1996 through May 1997. The Debtors records subpoenaed by the committee for the Rule 2004 Examination conducted by creditors committee counsel were never returned to the debtors for their use.

. . . .

8. The debtors object to the court's finding with respect to the inventory of the safe deposit boxes as it fails to credit in any way the debtors' testimony with respect to the contents of those boxes any information furnished to the U.S. Trustee and the Creditors Committee.

On March 17, 1998, this proceeding was filed in this Court.[2] On March 29, 2000, this Court, after reviewing the record, entered an order advising the participants that the Court was persuaded that additional evidence was needed on the issues of the Debtors' current financial status and Joe Swaffar's current physical condition. Hearings were held by this Court on April 7 and April 20, 2000, in order to receive evidence relating to these two matters.

Mr. Swaffar testified that he suffered a heart attack in 1991, resulting in a triple bypass and the installation of a pacemaker; that his physician has prescribed "multiple medications" in an effort to regulate his heart beats; that he has severe and constant pain in the chest area; that he visits his physician twice a week in an attempt to discover and remedy the problem; and that his physician has prescribed a mechanical apparatus that he required to wear "every night" to deal with a breathing problem.[3]

Relative to his financial standing, Mr. Swaffar testified that since September 1999, he has received approximately $34,000.00 from architectural activities; and that he expects to receive approximately $100,000.00 from projects either completed or in the final stages of construction.

2. On April 16, 1998, the Bankruptcy Court entered an order approving Debtors' voluntary waiver of Discharge relative to claims of all creditors and other parties in interest in Debtors' Chapter 7 liquidation proceeding pursuant to 11 U.S.C. Section 727(a)(10).

3. During the hearing conducted on April 20, Mr. Swaffar had a sudden onset and dramatic disorder that necessitated the consumption of medication to relieve the problem. This Court is persuaded that incident was not a sham or fake to gain sympathy.

Mrs. Swaffar testified that Mr. Swaffar is currently having spells where his heart skips and has irregular beats and, accordingly, is monitored by his physician in an attempt to deal with the problem; that the Debtors have two daughters, ages 16 and 31; and that the older daughter suffers from bipolar depression and is an alcoholic.

Mrs. Swaffar offered the following testimony relative to the out of town trips made by the Debtors which, allegedly, were in violation of the Bankruptcy Court's order:

"... I thought the reason why Judge Mixon did not want me to leave was because I would spend funds that were bankruptcy funds. I did not know that I could not go watch my daughter perform if my mother paid for the trip to go. So, therefore, I didn't realize that I was breaking the law ... I thought it was money, not the presence of body ...."

## DISCUSSION

### I.

### DEBTORS' DUE PROCESS RIGHTS

The following colloquy between the Bankruptcy Judge and Committee's attorney occurred on August 20, 1997, the date scheduled for Debtors to show cause why they should not be held in "civil and/or criminal contempt" for failing to comply with the terms of the Bankruptcy Court's orders:

The Court: It's a previous motion to sanction the debtors and also it had a prayer in there to hold the debtors in contempt. On my own motion I've rescheduled this matter for an additional hearing.... I will make, as part of the record today, the record that was previously established....[4]

. . . .

So with that stated, Ms. Henry, do you have any opening statement you wish to

make in connection with the evidence you're going to offer today?

Ms. Henry: Yes, your Honor, just briefly.

Ms. Henry: Your Honor, a procedural matter before we start. In the posture in which the order to show cause sits, it's my belief and understanding that the Swaffars would have the burden on proof; that the Court issued an order for them to show cause why this Court should not hold them in civil and/or criminal contempt. And it would be our position that they should go forward with testimony first today and allow the committee to put on any, as it will, rebuttal testimony, since we went first at the last hearing, your Honor, and presented all the testimony we had at that time.

The Court: I'm not sure, honestly, who has the burden of going forward, especially since this going to be bifurcated. Why don't you go ahead and put on whatever evidence you wish to first since you went first last time.

Ms. Henry: I will, your Honor. Your Honor, on behalf of the unsecured creditors committee, I appear today. And also one of my committee members, Ms. Elaine Simpson, appears. She's seated in the front row and she has been here at all of the previous hearings on this matter, including the May hearing where we first started and all of the continued hearing. Your Honor, the committee has asked us to go forward . . . .

■ Inasmuch as the criminal contempt proceeding was prosecuted by the attorney for the Committee of Unsecured Creditors who had initiated the proceeding resulting in a Temporary Restraining Order, later converted to a Preliminary injunction that enjoined Debtors from continuing to violate provisions of the Bankruptcy Rules

---

**4.** The bankruptcy judge was referring to a hearing held on May 6, 1997, on the motion filed by the Committee of Unsecured Credi-

tors to impose sanctions on Debtors. Reference to this record will be identified as Transcript of May 6.

by, allegedly, failing to account to the Bankruptcy Court and creditors for assets, expenditures; and further directing Debtors to destroy all of their credit cards, make available to the Committee all items of property, including jewelry, furs, and books, as well as preventing Debtors from taking any non-business trips, vacations or supplying funding for any travel or trips for themselves or immediate family members; and, in addition, prayed that Debtors be held in contempt, this Court is of the view Debtors' due process rights were violated because they were not prosecuted by a disinterested entity or person. The Bankruptcy Court in authorizing counsel for the Committee to serve as contempt prosecutor erred. *Young v. United States,* 481 U.S. 787, 801, 107 S.Ct. 2124, 2134, 95 L.Ed.2d 740 (1987) (where the Supreme Court held that the district court erred in designating, as prosecutors in a criminal contempt action, counsel for an interested party in the underlying civil action). *Brotherhood of Locomotive Firemen & Enginemen v. United States,* 411 F.2d 312, 319 (C.A.5, 1969) (appointment of interested prosecutor a due process violation).

Also, in prosecuting Debtors for criminal contempt, counsel for the Committee called Mike Tschiemer, a private investigator, who was employed by the Committee and was subpoenaed by the Committee to offer testimony regarding his investigation of Debtors. See: Transcript of August 20 at 106.

■ Furthermore, the Bankruptcy Court's notice in open court as well as its written show cause order did not specifically advise Debtors that the proceeding against them was criminal, nor "state the essential facts constituting the criminal contempt charged and describe it as such." See: Rule 42(b) of Federal Rules of Criminal Procedure which provides, in material part:

A criminal contempt ... shall be prosecuted on notice. The notice shall state ... the essential facts constituting the criminal contempt charged and describe it as such.

The following constitutes the notice given the Debtors by the bankruptcy judge, in open court, on May 6, 1997:

Based on the record I have before me, I think a contempt proceeding is more than warranted. And so I will, on my own ticket, issue an order to Show Cause why these two Debtors shouldn't be held in contempt, criminal contempt and/or civil contempt, to be sanctioned, A, for what things they've done that they were ordered not to do; things they were ordered to do that they didn't do; and continuing violations of orders that they're under an obligation to do and they continued, as we speak, to not perform. See: Transcript of May 6 at 139.

The written show cause order provides as follows:

Joe Thomas Swaffar and Sandra Carol Swaffar are hereby ordered to appear in the United States Bankruptcy Court ... on the 27th day of June, 1997, at 11:00 a.m. to show cause why each of them should not be held in civil and/or criminal contempt for failing to comply with the terms of this Court's Order of June 25, 1996, and August 8, 1996.

Rule 9020(b) of the Bankruptcy Rules relating to contempt proceedings provides in relevant part:

Contempt committed in a case or proceeding pending before a bankruptcy judge ... may be determined by the bankruptcy judge *only after a hearing on notice. The notice shall be in writing, shall state the essential facts constituting the contempt charged and describe the contempt as criminal or civil....* (Emphasis added).

It is readily apparent that the Bankruptcy Court's show cause notice to Debtors does not meet the requirements of Rule 9020(b) in two significant areas. First, the show cause notice does not state the essential facts constituting the contempt

charged, and secondly, the notice does not describe the contempt as either "criminal or civil," but directs Debtors to show cause why each of them should not be held in "civil and/or criminal contempt." The "civil and/or criminal contempt" phrase is not only confusing, but ambiguous as well. The phrase "criminal or civil" is in the disjunctive and express mutually exclusive alternatives while "civil and/or criminal" is in both disjunctive and conjunctive. See: *Gompers v. Buck's Stove & Range Company*, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911) (where the Supreme Court addressed the important difference, as well as the overall objective, between civil contempt and criminal contempt proceedings. The Court observed that punishment imposed in a civil contempt action is, in essence, remedial and is designed to motivate or coerce the defendant to do what he had refused to do. But a punishment imposed in a criminal contempt action is solely a punishment for a defendant's disobedience as well as to vindicate the authority of the court issuing the directive that defendant refused to obey). See also: Burleson, "Contempt Proceedings in Bankruptcy Court" 22, No. 3 The Colorado Lawyer 515 (1993) (noting, among other things, that the notice must state the essential facts constituting the contempt charged and must describe the contempt as criminal or civil).

During the course of the criminal contempt hearing, Debtors were never advised that they enjoyed a presumption of innocence. While counsel for the Committee was told that she bore the burden of proving Debtors' guilt, she was never advised that she must prove the guilt of Debtors' by clear and convincing evidence beyond a reasonable doubt.[5] See also: Murphy, "Can They Do That? The Due

Process and Article III Problems of Proposed Findings of Criminal Contempt in Bankruptcy Court" 78, Pt. 2 Minnesota Law Review 1607, 1625 (1994) (observing that courts currently regard criminal contempt as a "crime in the ordinary sense" for purposes of determining the defendant's procedural rights).

The Bankruptcy Court's, order of February 17, 1998, found "... the Debtors have flouted [the Court's orders] and made a complete mockery of their chapter 11 case and the fiduciary responsibilities they undertook[;][t]heir conduct is so egregious as to require a stern recompense[;][t]herefore, Joe Thomas Swaffar and Sandra Carol Swaffar are adjudged to be in *criminal contempt ...*" but there is no reference to nor any indication of application of the beyond a reasonable doubt standard by the bankruptcy court in finding Debtors in criminal contempt. (Emphasis added).

In addition, the Bankruptcy Court's show cause order directed Debtors to show cause why "each of them should not be held in civil and/or criminal contempt for failing to *comply with the terms of this Court's order of June 25, 1996, and August 8, 1996.*" (Emphasis added). However, the Bankruptcy Court in its order of contempt "*adjudged [Debtors] to be in criminal contempt of this Court's orders of May 23 and June 24, 1996.*" (Emphasis added).

Another concern that this Court has regarding the due process rights of Debtors is the fact that debtors were fined $10,000.00 each, but were not afforded a jury trial. It is clear that there is no right to jury trial involving petty offenses. *Bloom v. Illinois*, 391 U.S. 194, 210, 88 S.Ct. 1477, 1486, 20 L.Ed.2d 522 (1968). However, petty offenses or crimes as defined in 18 U.S.C. Section 19, include offenses punishable by fines up to $5000.00.

---

5. In *Gompers v. Buck's Stove & Range Company*, 221 U.S. 418, 444, 31 S.Ct. 492, 499, 55 L.Ed. 797 (1911), the Supreme Court made the relevant and material observations: "... it is certain that in proceedings for criminal contempt the defendant is presumed to be innocent, he must be proved to be guilty be-

yond a reasonable doubt ...." See also: *Wright v. Nichols*, 80 F.3d 1248 (8th Cir.1996) (where the Court observed that in proceedings for criminal contempt, the defendant must be proved to be guilty beyond a reasonable doubt).

See *Bloom v. Illinois,* supra, 391 U.S. at 211, 88 S.Ct., at 1487 where the Court observed "... [W]hen the legislature has not expressed a judgment as to the seriousness of an offense by fixing a maximum penalty which may be imposed, we are to look to the penalty actually imposed as the best evidence of the seriousness of the offense."[6] The Supreme Court also made the following material observation in *Bloom:*

> When a serious contempt is at issue, considerations of efficiency must give way to the more fundamental interest of ensuring the evenhanded exercise of judicial power. In isolated instances recalcitrant or irrational juries may acquit rather than apply the law to the case before them. Our system has wrestled with this problem for hundreds of years, however, and important safeguards have been devised to minimize miscarriages of justice through the malfunctioning of the jury system. Perhaps to some extent we sacrifice efficiency, expedition, and economy, but the choice in favor of jury trial has been made, and retained, in the Constitution. We see no sound reason in logic or policy not to apply it in the area of criminal contempt.

While these circumstances give this Court great concern regarding the soundness and integrity of the proceedings resulting in Debtors being found guilty of criminal contempt, this Court recognizes that counsel for Debtors did not bring these procedural matters to the Bankruptcy Court's attention nor register an objection for the record, and, accordingly, this Court will not address these circumstances further given the fact that the Court will take affirmative action on other issues in this matter that will, in effect, render these circumstances moot or reduce them to unjustifiable issues.

6. In *United States v. Time,* 21 F.3d 635 (5th Cir.1994), the court held that defendants charged with criminal contempt for violating a court order were not entitled to a jury trial, where the fines imposed did not exceed $5,000.00.

II.

## FINES UNREASONABLY DISPROPORTIONAL TO GRAVITY OF OFFENSE

■ The Bankruptcy Court in finding Debtors "... to be in criminal contempt of [it's] orders of May 23 and June 24, 1996[,]" further found that "... Debtors ... offered little if any explanation or justification for their conduct."

In reviewing the record, this Court scrutinized relevant testimony given by Debtors (which is summarized below and has not, in the judgment of this Court, been rebutted, and, accordingly, merit serious and solemn consideration) in determining whether Debtors wilfully disobeyed the Bankruptcy Court's orders, or merely exercised poor judgment and were negligent in endeavoring to comply with the orders; and, significantly, whether the action of the Committee, in refusing to return records that the Committee subpoenaed from Debtors, was a contributing factor to Debtors' failure to comply with certain aspects of the Bankruptcy Court's orders:

1. In response to questions regarding Debtors' failure to file federal income tax returns for the years 1995 and 1996, as well as the reason for not filing monthly operating reports as directed by the order of the Bankruptcy Court, Mr. Swaffar stated that the attorney for the Committee had subpoenaed business records as far back as 1990, and had refused to relinquish the records to Debtors and Debtors' accountant; that Debtors' attorney also asked for the records, but the records were not relinquished until the Trustee obtained a court order directing counsel for the Committee to relinquish the documents.[7]

7. The bankruptcy court's agreed order of May 27, 1997, provides:
    ... During the pendency of the Chapter 11 case, the ... committee ... subpoenaed numerous documents from ... debtor and his accountant. The court finds that a re-

See: Transcript of August 20 at 101–105.

2. Mr. Swaffar also testified that Mrs. Swaffar could not prepare and file operating reports for the Bentonville Super 8 business due to the fact that she was replaced as manager of the business and did not have access to the records. See: Transcript of August 20 at 61.

3. Mr. Swaffar stated that Debtors did not list an Elvis Presley gold album as an asset of the Chapter 11 estate because the gold album belong to his thirteen year old daughter; and that an undivided interest in a two acre vacant lot in Malvern, Arkansas was not listed because in early 1990, he surrendered his undivided interest to his co-tenants in order to be relieved of sharing maintenance expenses. See: Transcript of August 20 at 30 and 60.

4. Mr. Swaffar testified that tile used to repair the family's kitchen floor was not purchased with estate funds, but was a gift from a North Little Rock dealer that he had done business with over the years; and that the cost for installing the title was paid by his wife's mother.

5. Swaffar further stated that Debtors did not supply an inventory of two safety deposit boxes located at the Bank of Malvern and Pulaski Bank and Trust Company because there was nothing of value in either; that November 17, 1987, was the last time Debtors had actually opened the Malvern box and January 14, 1980, was the last time Debtors had opened the Pulaski Bank and Trust Company box until Debtors were directed to inventory the boxes in either May or August, 1997. See: Transcript of August 20 at 52–66.

Given the above unrebutted explanations as well as the fact that a Trustee was appointed to take charge of Debtors' Chapter 11 estate which was, in a relative short span of time, converted to a Chapter 7 proceeding and Debtors' voluntary waiver of discharge when compared to the misconduct of Debtors (established beyond a reasonable doubt) [8], this Court is of the view that the imposition of twenty thousand dollars in fines alone give rise to an inference of gross disproportion and disparity.

Another meaningful and supportive factor that this Court has considered in reaching the conclusion that the fine alone give rise to an inference of gross disproportionality, is a $950.00 fine imposed by the same bankruptcy judge against an attorney found to have been in criminal contempt for disobeying an order in a Chapter 13 proceeding. See: *Brown v. Ramsay*, 3 F.3d 1174 (8th Cir.1993).

In *Brown v. Ramsay*, Brown, an attorney, represented the debtor in a transfer of property valued about $100,000.00 from debtor's husband. Subsequently, debtor transferred the property to said attorney for the alleged purpose of securing legal fees of $10,000.00 that debtor owed the

---

view of these documents by the Chapter 7 Trustee is *reasonable and necessary for proper administration of the Chapter 7 case.* (Emphasis added).

It is ... ordered ... that ... counsel for ... committee ... is ... directed to turn over the ... the subpoenaed documents to counsel ... for the Chapter 7 Trustee.

If the numerous documents withheld by the Committee were necessary for proper administration of the Chapter 7 action, surely these same records were equally as vital in accommodating Debtors in administering the Chapter 11 proceedings as well as complying with the court's orders.

8. This Court is persuaded that the record reflects that Debtors wilfully violated the Bankruptcy Court's order in the following behavior: (a) Failure to destroy all credit cards; (b) Failure to record all cash transactions on monthly reports disclosing both personal and business transactions, however, amended reports were subsequently filed disclosing such matters; (c) Taking non-business trips to Missouri, Tennessee, Texas and Mississippi which included a three hour visit to the gambling area of a casino resulting in minor slot machine credits as opposed to losses; and (d) Use of estate funds for payment of some personal expenses, but this action ceased when Debtors were advised this was improper.

attorney with the remaining value of the property to be held in trust for debtor's creditors. Pursuant to action initiated by the standing Chapter 13 Trustee, the Bankruptcy Court entered an order disqualifying the attorney from participating in the proceedings. But despite the order of disqualification, the attorney continued to represent the debtor which included the filing of pleading on behalf of the debtor. Inasmuch as Brown was an officer of the bankruptcy court and had an affirmative duty to implement and obey all orders, rules and regulations of the court, Brown's offense was of a greater magnitude when compared with Debtors' conduct in this proceeding, but Brown was fined only $950.00, while Debtors were fined $10,000.00 each.

The Eighth Amendment to the United States Constitution provides:

> Excessive bail shall not be required, *nor excessive fines imposed, nor cruel and unusual punishment inflicted.* (Emphasis added).

Since it is plain that the $10,000.00 fine imposed against each debtor is a fine as punishment for violating the orders of the bankruptcy court and this Court is persuaded that the fine is excessive, this Court further holds that the imposition of said fines violate the Excessive Fine Clause of the Eighth Amendment. See: *United States v. Bajakajian,* 524 U.S. 321, 332, 118 S.Ct. 2028, 2035, 141 L.Ed.2d 314 (1998) (stating that excessive means surpassing the usual, the proper or a normal measure of proportion). Consequently, this Court reduces the fine against Sandra Carol Swaffar to $1,500.00 and the fine against Joe Thomas Swaffar to $3,500.00.

## III

### THIRTY DAYS INCARCERATION UNAUTHORIZED

■ Title 18 United States Code, section 401 is the general contempt statute which provides, in relevant part:

> A court of the United States shall have power to punish by *fine or imprisonment,* at its discretion, such contempt of its authority, and none others, as—
>
> . . . .
>
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command. (Emphasis added).

In finding that Debtors were in criminal contempt of the court's orders of May 23 and June 24, 1996, and imposing sanctions the Bankruptcy Court made the following material comment in the court's order of contempt:

> In short, the Debtors have flouted this Court's orders and made a complete mockery of their chapter 11 case and the fiduciary responsibilities they undertook. Their conduct is so egregious as to require a stern recompense. Therefore, Joe Thomas Swaffar and Sandra Carol Swaffar are adjudged to be in criminal contempt of this Court's orders of May 23 and June 24, 1996. For their contempt they are assessed a fine of $10,000.00 each, payable to the Trustee, and they are ordered into the custody of the United States Marshal to be incarcerated for a period of thirty (30) days.

It is apparent that the Bankruptcy Court in imposing a $10,000.00 fine and thirty days incarceration against each debtor, the court simply considered each debtor's offensive actions as a single offense of contempt and, accordingly, imposed only a single sanction, and did not purport to, for example, impose a fine relative to the failure to destroy all credit cards and incarceration for making non-business trips. Significantly, if the Bankruptcy Court's sanctions were not imposed as sanctions for a single contempt offense, there is absolutely no way to tell what sanction was imposed on which offense given the fact that the court dealt specifically with numerous alleged offensive acts that served as a basis for finding the debtors in criminal contempt and concluding that Debtors' "conduct is so egregious as to require a stern recompense."

Since it is the view of this Court that 18 U.S.C. section 401 is controlling in this criminal contempt proceeding and each debtor was found guilty and penalized for only a single offense of contempt and cannot be penalized to both fine and incarceration, the Court vacates the thirty day period of incarceration imposed against each debtor.[9] *United States v. Digirlomo,* 548 F.2d 252 (8th Cir.1977) (holding that the sentence of imprisonment imposed in addition to a fine was illegal in a criminal contempt action under 18 U.S.C. section 401).

■ Even if section 401 was not dispositive in this proceeding, this Court would vacate the thirty day incarceration sanction notwithstanding because a substantial part of the alleged offensive conduct relied on in finding Debtors guilty of criminal contempt (separate and apart from the conduct found by this Court to have been established beyond a reasonable doubt) was not proven by Committee's attorney by competent evidence beyond a reasonable doubt that the alleged offensive conduct was willful as distinguished from an accidental, inadvertent or negligent violation, for example, not seriously analyzing and familiarizing themselves with the Bankruptcy Court's directives due to Debtors' desire to motivate and support their teenage daughter who was participating in extracurricular activities that extended as far as the states of Missouri and Texas.

---

**9.** See *United States v. Holloway,* 991 F.2d 370 (7th Cir.1993) (stating that the mandate of 18 U.S.C. section 3151(b) providing that fines may be imposed in addition to any other sentence does not apply to section 401 inasmuch as 18 U.S.C. section 3151(a) limits the application of the statute in dealing with criminal sanctions where specific provisions appear as in 18 U.S.C. section 401) (both imprisonment and fine may not be imposed for a single offense).